C.H. ROBINSON COMPANY; Burnett Produce Co., Inc.; C.J.'s Brokerage; C.L. Fain Co.; General Produce, Inc.; Georgia Tomato Co., Inc.; Golman–Hayden Co., Inc.; Six L's Packing Co.; Spada Distributing Company, Plaintiffs,

v.

B.H. PRODUCE COMPANY, INC.; Trust Company Bank, N.A.; O.A. Harmon; Georgia Ann Harmon; Iverson Brokerage Co.; Milo Iverson; Trust Company Bank of Clayton County, Defendants.

Civ. A. No. 1:87–CV–0795–JOF.

United States District Court,
N.D. Georgia,
Atlanta Division.

Oct. 4, 1989.

John Wayne Moulton, Moulton, Carriere, Smegal & Hendon, Decatur, Ga., Stephen P. McCarron, Sures, Dondero & McCarron, Silver Spring, Md., for plaintiffs.

George M. Geeslin, Charles M. Goetz, Jr., Norton, Pennington, Goetz, Cronkright & Prior, Katharine S. Butler, Trust Co. Bank, Office of Corporate Counsel, Marcus Glenn Howell, Sr., Richard H. Johnston & Associates, Atlanta, Ga., David Paul Winkle, Oliver, Duckworth, Sparger & Winkle, Jonesboro, Ga., for defendants.

## ORDER

FORRESTER, District Judge.

This matter is before the court on plaintiffs' motion for summary judgment and motions for summary judgment by defendants Trust Company Bank and Trust Company Bank of Clayton County. Fed.R. Civ.P. 56. This action is brought under the Perishable Agricultural Commodities Act (PACA) statutory trust provisions, 7 U.S.C. § 499e(c). Plaintiffs are sellers and suppliers of perishable agricultural commodities who sold commodities to defendant B.H. Produce over a period of time but were never paid. Plaintiffs seek to recover monies paid to the defendant banks in satisfaction of defendant B.H. Produce's loans. For the reasons discussed below, plaintiffs' motion for summary judgment is DENIED, defendant Trust Company Bank's motion for summary judgment is GRANTED, and defendant Trust Company Bank of Clayton County's motion for summary judgment is GRANTED IN PART and DENIED IN PART.

## I. STATEMENT OF FACTS.

The statement of undisputed material facts and evidentiary materials provided by the parties in support reveal the following undisputed facts. The plaintiffs sold perishable agricultural commodities in interstate commerce to the defendant, B.H. Produce Company, Inc., for a total amount sold of $227,476.60 between April 1986 and October 1986. The commodities were delivered by plaintiffs to B.H. Produce and accepted by B.H. Produce, but B.H. Produce failed to pay for the commodities. Each of the plaintiffs filed notices with the United States Department of Agriculture (USDA) under the statute (7 U.S.C. § 499e(c)) to

preserve their right to trust benefits. In the relevant time period, B.H. Produce made loan payments of over $130,000 to the defendant banks.

### A. Bank Loans.

1. Trust Company Bank of Clayton County

Trust Company Bank of Clayton County made three loans to B.H. Produce. One, for $17,250 on July 9, 1984, was to finance the purchase of a 1984 BMW 528e. The only collateral for this loan was the automobile. After April 16, 1986, Trust Company Bank of Clayton County received payments of $2,459.04 from the defendant on this loan. The second loan was made in August 1984 for $21,571.50 to finance the purchase of a 1985 Jaguar XJ6. The only collateral for this loan was the automobile. After April 16, 1986, the bank received $11,616.80 in payments on this loan.

The third loan was on August 6, 1985 for $160,428.23, and was a renewal of four prior notes. The prior notes were for $100,000 made in September 1984 to purchase refrigeration units, with a balance upon renewal of $77,301.63; and three notes each for $50,000, made in December 1984, January 1985, and June 1985. These three loans were made to finance working capital. The balances upon renewal were $26,161.88, $6,964.72, and $50,000. On the renewal note, the bank took a security interest in all property of B.H. Produce Company as collateral, including various certificates of deposit totaling $108,360.43, equipment, accounts receivable, and inventories. The loan also was guaranteed by Georgia Ann and O.A. Harmon. After April 16, 1986, the defendant bank received $102,-716.79 in payments on this loan.

On May 19, 1986 the Trust Company Bank of Clayton County released and defendant Georgia Ann Harmon redeemed a certificate of deposit securing the August 6 loan, in the amount of $25,000. Georgia Ann Harmon took the proceeds from this certificate of deposit and deposited them into B.H. Produce Company's general checking account. She directed the bookkeeper for B.H. Produce Company, Juanita

Cox, to always pay loan payments to defendant Trust Company Bank of Clayton County first whenever certificate of deposit proceeds were deposited into the general checking account. After the certificate of deposit was released and deposited into the general checking account, B.H. Produce continued to make regular payments of each of its loans from Trust Company Bank of Clayton County. These payments exceeded the $25,000 amount deposited into the account from the certificate of deposit.[1]

2. Trust Company Bank

Trust Company Bank made three loans to B.H. Produce Company, one on August 8, 1985 for $8,479.00, another March 10, 1986 for $21,108.80, and a third on August 2, 1986 for $9,697.00. Each loan was made to finance the purchase of insurance from Alexander Insurance Agency and was endorsed by J.E. Alexander. There was no collateral for any of the loans. Defendant Trust Company Bank received a total of $2,734.47, $22,375.28, and $10,424.20 in payments on these loans after April 16, 1986.

B. *Plaintiff's Claims.*

The plaintiffs' claims under the statutory trust are as follows.

| Plaintiff | Trust Amount Claimed |
| --- | --- |
| Burnett Produce Co. | $ 24,321.20 |
| C.H. Robinson Co. | 71,833.90 |
| C.J.'s Brokerage | 16,030.00 |
| C.L. Fain Co. | 29,644.00 |
| General Produce, Inc. | 17,568.00 |
| Georgia Tomato | 2,044.00 |
| Golman–Hayden | 9,790.00 |
| Spada Distributing Co. | 20,275.00 |
| Six L's Packing Co. | 35,970.50 |
| TOTAL | $227,476.60 |

C. *C.J.'s Brokerage.*

C.J.'s Brokerage made two sales to B.H. Produce. The first, on April 16, 1986, was for $8,190.00, and the second, on May 1, 1986, was for $12,340.00. B.H. Produce has paid $4,500.00 on the first claim, leaving a balance of $3,690.00 owed. The sales were made FOB, and therefore B.H. Produce received the goods fourteen to sixteen days after the date of sale. There was no written agreement between C.J.'s Brokerage and B.H. Produce as to the time of payment. The USDA received C.J.'s Brokerage's notice of intent to preserve trust benefits for the April 16 sale on June 2, 1986. The USDA received the notice for the May 1 sale on June 9, 1986. Neither of these notices included the date payment was due for the commodities sold.

D. *Golman–Hayden.*

Golman–Hayden sold commodities to B.H. Produce on June 11, 1986 for $9,790.00. B.H. Produce received the commodities June 9, 1986. There was no written agreement between Golman–Hayden and B.H. Produce as to the time of payment. The USDA received Golman–Hayden's notice of intent to preserve trust benefits on July 2, 1986.

E. *Six L's Packing Company.*

Six L's Packing Company sold commodities to B.H. Produce as shown below.

| Date of Invoice | Amount | Shipping Date | Notice Date |
| --- | --- | --- | --- |
| 8/4/86 | $9,680.00 | 7/28/86 | 9/22/86 |
| 8/13/86 | 9,022.50 | 8/5/86 | 9/22/86 |
| 8/29/86 | 8,320.00 | 8/21/86 | 10/9/86 |
| 9/2/86 | 8,948.00 | 8/26/86 | 10/9/86 |

---

**1.** Two other certificates of deposit were redeemed by B.H. Produce, one for $10,000 and one for $14,859.89. However, these two certificates of deposit were not deposited in the corporate account maintained at Trust Company Bank of Clayton County.

Defendant B.H. Produce Co. received the commodities one to two days after the date of the shipment. There was no written agreement between the plaintiff Six L's Packing Co and B.H. Produce as to the time of payment for these goods. The October 9, 1986 notice does not say that it is a "notice of intent to preserve trust benefits." It does say that "the enclosed invoices are being submitted under the PACA requirements to maintain the trust."

### F. C.H. Robinson Co.

| Date of Invoice | Amount | Delivery Date | Notice Date |
|---|---|---|---|
| 9/11/86 | $10,810.30 | 9/15/86 | 10/15/86 |
| 9/11/86 | 12,136.00 | 9/15/86 | 10/15/86 |
| 9/17/86 | 9,370.80 | 9/22/86 | 10/15/86 |
| 9/17/86 | 8,290.55 | 9/21/86 | 10/15/86 |
| 9/20/86 | 12,423.10 | 9/28/86 | 10/15/86 |
| 9/30/86 | 8,267.70 | 10/5/86 | 10/21/86 |
| 9/30/86 | 7,200.00 | 10/3/86 | 10/21/86 |
| 9/30/86 | 11,328.55 | 10/5/86 | 10/21/86 |
| 10/10/86 | 12,088.00 | 10/15/86 | 11/4/86 |

There was no written agreement between C.H. Robinson and B.H. Produce as to the time for payment. The notice of intent to preserve trust benefits filed for the September 17, 1986 invoice in the amount of $8,290.55 indicated the invoice price was $8,390.55.

### G. General Produce.

| Date of Invoice | Amount |
|---|---|
| 8/20/86 | $ 90.00 |
| 8/21/86 | 250.00 |
| 8/22/86 | 73.50 |
| 8/22/86 | 1,075.00 |
| 8/22/86 | 1,406.50 |
| 8/22/86 | 1,050.00 |
| 8/22/86 | 1,282.50 |
| 8/25/86 | 1,650.00 |
| 8/26/86 | 1,650.00 |
| 8/27/86 | 2,200.00 |
| 9/5/86 | 2,200.00 |
| 9/7/86 | 1,150.00 |
| Undetermined | 850.00 |
| 9/10/86 | 200.00 |
| 9/16/86 | 1,800.00 |
| 9/18/86 | 2,450.00 |
| 9/19/86 | 2,500.00 |
| 9/25/86 | 858.00 |
| 9/29/86 | 1,600.00 |
| 9/29/86 | 1,207.50 |
| 10/13/86 | 2,360.00 |
| 10/14/86 | 2,592.50 |

B.H. Produce received all of the above commodities from General Produce on the invoice dates indicated above. There was no written agreement between General Produce and B.H. Produce as to the date of payment. The USDA received General Produce's notice of intent to preserve trust benefits as to all of the commodities sold on the above invoices on October 17, 1986. The invoices provided by General Produce do not indicate the payment due date and the past due amount.

### H. Spada Distributing Co.

Spada Distributing Company sold commodities to B.H. Produce on September 2, 1986 in the amount of $20,275. The commodities were received by B.H. Produce fifteen to seventeen days after the date of sale. There was no written agreement between Spada Distributing and B.H. Produce on the time for payment. The USDA received Spada Distributing Company's notice of intent on October 21, 1986.

### I. Georgia Tomato Co.

Georgia Tomato Company sold commodities to B.H. Produce on October 9, 1986 for $3,200 and on October 13, 1986 for $1,344. Georgia Tomato Co. has received a $2,500 payment from B.H. Produce on the two invoices. There is no evidence on when B.H. Produce received Georgia Tomato's commodities. There is no evidence as to a written agreement between these two parties as to time of payment. The USDA

received Georgia Tomato Company's notice of intent to preserve trust benefits on October 28, 1986 for both shipments.

J. *Burnett Produce Co.*

| Date of Invoice | Amount |
|---|---|
| 9/18/86 | $ 355.00 |
| 9/19/86 | 1,822.00 |
| 9/21/86 | 417.50 |
| 9/22/86 | 250.00 |
| 9/22/86 | 42.50 |
| 9/24/86 | 56.00 |
| 9/24/86 | 1,275.00 |
| 9/24/86 | 12.00 |
| 9/24/86 | 1,700.00 |
| 9/25/86 | 1,306.50 |
| 9/25/86 | 150.00 |
| 9/25/86 | 102.00 |
| 9/26/86 | 64.60 |
| 9/26/86 | 2,329.00 |
| 9/28/86 | 42.00 |
| 9/28/86 | 425.00 |
| 9/28/86 | 1,495.00 |
| 9/29/86 | 450.50 |
| 9/29/86 | 22.00 |
| 9/30/86 | 1,337.50 |
| 9/30/86 | 48.00 |
| 10/2/86 | 795.00 |
| 10/2/86 | 233.00 |
| 10/3/86 | 947.50 |
| 10/3/86 | 28.00 |
| 10/3/86 | 285.00 |
| 10/3/86 | 2,059.00 |
| 10/5/86 | 340.00 |
| 10/5/86 | 3,466.75 |
| 10/6/86 | 66.00 |
| 10/6/86 | 468.50 |
| 10/6/86 | 1,650.00 |
| 10/7/86 | 845.00 |
| 10/8/86 | 12.00 |
| 10/12/86 | 384.00 |

The commodities were received by B.H. Produce on the invoice dates above. There was no written agreement between Burnett Produce and B.H. Produce as to the time for payment. USDA received Burnett Produce Company's notice of intent to reserve trust benefits as to each of the above transactions on October 24, 1986. The notice of intent did not indicate the date payment was due on any of the invoices.

K. *B.H. Produce's Records.*

Between 1968 and October 1986, defendant Georgia Ann Harmon was secretary and treasurer of B.H. Produce Company. Between April 1984 and October 1986 Juanita Cox was employed as bookkeeper for B.H. Produce.

B.H. Produce ceased doing business in October 1986 and pursuant to instructions from defendant Georgia Ann Harmon, Juanita Cox packed up all the corporate records of B.H. Produce into storage boxes and had them delivered to a storage facility. When B.H. Produce no longer had sufficient funds to pay for this storage, Georgia Ann Harmon had all of the storage boxes containing the corporate records of B.H. Produce removed from the storage and delivered to the basement of her home.

Pursuant to subpoena, Georgia Ann Harmon removed a file from the corporate records of B.H. Produce entitled "PACA Letters from suppliers (PACA) Perishable Agricultural Commodities Act" and produced it at her deposition. The file was maintained by Juanita Cox or another employee or both. The file contained no notices of intent to preserve trust benefits from any of the plaintiffs. During her employment at B.H. Produce Juanita Cox never received any notice of intent to preserve trust benefits from any of the plaintiffs.

On November 6, 1988, Juanita Cox went to the basement of Georgia Ann Harmon's home and found and examined all of the corporate records from B.H. Produce for 1984 through 1986. She found no notices of intent to preserve trust benefits from any of the plaintiffs. If any notice of intent to preserve trust benefits had been received by B.H. Produce from any of the plaintiffs, it would have been maintained in the corporate records in accordance with the policies and procedures of B.H. Produce.

## II. CONCLUSIONS OF LAW.

A. *Summary Judgment Standard*

Fed.R.Civ.P. 56 mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of *every* element essential to the party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–2553, 91 L.Ed.2d 265

(1986); *Brown v. City of Clewiston*, 848 F.2d 1534, 1537 (11th Cir.1988). The movant bears the "initial responsibility" of asserting the basis for his motion. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2552–2553; *Livernois v. Medical Disposables, Inc.*, 837 F.2d 1018, 1022 (11th Cir.1988). The movant is not required to negate his opponent's claim, however. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2552–2553. Rather, the movant may discharge his burden by merely "showing—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. at 2554.

After the movant has carried his burden, the non-moving party is then required "to go beyond the pleadings" and present competent evidence designating "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553. This evidence "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 581, 106 S.Ct. 1348, 1353, 89 L.Ed.2d 538 (1986); *Samples v. City of Atlanta*, 846 F.2d 1328, 1331 (11th Cir.1988). The court is to view all evidence and factual inferences in a light most favorable to the non-moving party, *Samples v. City of Atlanta*, 846 F.2d at 1331. Thus, to survive a motion for summary judgment, the non-moving party must come forward with specific evidence of *every* element material to his case so as to create a genuine issue for trial. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552–2553; *Brown*, 848 F.2d at 1537.

### B. *Perishable Agricultural Commodities Act*

7 U.S.C. § 499e(c) provides for a statutory trust in favor of unpaid sellers of perishable agricultural commodities. The commodities received in all transactions, all inventories of food or food products, and any receivables or proceeds from the sale of the commodities "shall be held by such ... broker in trust for the benefit of all unpaid suppliers or sellers of such commodities ... until full payment ... has been received...." 7 U.S.C. § 499e(c)(2). The supplier or seller loses the benefit of the trust unless the seller gives written notice of his intent to preserve the trust benefits to the broker and the Secretary of Agriculture as specified. 7 U.S.C. § 499e(c)(3). The statute does not provide a mechanism for distributing trust assets. Regulations provide some detail on the functioning of the trust and further requirements for notices. 7 CFR § 46.46.

The intent of this section is evident from the statute and its legislative history. 499e(c)(1) reads in full:

It is hereby found that a burden on commerce in perishable agricultural commodities is caused by financing arrangements under which commission merchants, dealers, or brokers, who have not made payment for perishable agricultural commodities purchased, contracted to be purchased, or otherwise handled by them on behalf of another person, encumber or give lenders a security interest in, such commodities, or on inventories of food or other products derived from such commodities, and any receivables or proceeds from the sale of such commodities or products, and that such arrangements are contrary to the public interest. This subsection is intended to remedy such burden on commerce in perishable agricultural commodities and to protect the public interest.

One of the primary concerns of the legislation is the status of unpaid sellers at the time of a broker's bankruptcy or insolvency. Prior to the enactment of this legislation, sellers were unsecured creditors and received little protection. H.R.Rep. No. 543, 98th Cong. *reprinted in* 1984 U.S. Code Cong. & Admin.News at 405, 407. The statute provides a remedy by imposing a trust which is exempt from the bankruptcy estate and therefore is paid before secured creditors in bankruptcy. *In re Super Spud, Inc.*, 77 B.R. 930 (Bankr.M.D. Fla.1987); *In re Fresh Approach*, 51 B.R. 412, 419 (Bankr.N.D.Tex.1985).

This amendment was modeled on similar provisions in the Packers and Stockyards

Act amendments of 1976, 7 U.S.C. § 196.[2] *In re Fresh Approach, Inc.*, 48 B.R. 926 (Bankr.N.D.Tex.1985). Authority under that statute, therefore, is persuasive in interpreting the PACA amendment at issue here. *Id.*

### C. Bona Fide Purchaser Defense

■ The plaintiff is seeking to force the banks to return money paid to them by B.H. Produce. The banks argue that they were bona fide purchasers without notice of the trust, so the funds cannot be returned.

Under ordinary trust law, "if the trustee transfers the property in breach of trust to a bona fide purchaser the transferee is entitled to hold the property free of the trust and is under no liability to the beneficiaries." 4 A. Scott, *The Law of Trusts*, § 284, p. 2342 (3d ed. 1967). The interests of the beneficiaries are not cut off if the transferee has notice of the trust, *id* at § 288, p. 2365, and the transferee can be compelled to restore the property or its value to the trust, *id.* at § 291, p. 2376. A third person has notice of a breach of trust not only when he actually knows of the breach but also when under the circumstances he should know of the breach. *Id.* at § 297, p. 2405.

To be free of any obligation to the beneficiaries, the transferee must also pay value for the trust property. Ordinarily, if the trustee transfers the trust property in satisfaction of a debt owed by the trustee to the transferee, the transferee takes the property subject to the trust. *Id.*, § 304, p. 2453. This general rule is not applicable, however, when the debt is paid with money; the creditor is entitled to keep the funds if he had no notice that it was subject to any equity. *Id.* at § 304.1, p. 2456. Furthermore, if the transferee had a security for the debt, and the trust funds are transferred to satisfy the debt, the creditor is a purchaser for value. *Id.*, § 304.2, p. 2457.

The cases cited by the parties allowed buyers to recover money from third parties where the third party was a creditor with a security interest in inventory or proceeds, or where the third party had actual or constructive knowledge of the trust. In *Bast v. Orange Meat Packing Co. (In re G & L Packing Co.)*, 41 B.R. 903 (N.D.N.Y. 1984), the court held that the trust gives the unpaid sellers priority over lenders with security interest. In that case, the proceeds had been applied to a line of credit held by the bank, and the court ordered the bank to return these payments to the sellers. In *Gotham Provision Company*, 669 F.2d at 1000, a bankruptcy appeal, the court held that the purpose of the statutory trust of the Packers and Stockyards Act was to give a priority interest to the sellers above the lenders. The court held that unpaid sellers have priority over assets in which the lender has a security interest and the unpaid sellers may recover the proceeds of the receivables to the extent of the outstanding balance on their sales. *Id.* at 1010. The court stated that the bank had constructive notice of the trust because the trust was created by a federal statute. *Id.* at 1011. The unpaid sellers were entitled to recover against the bank.

In *McLean Cattle Co. v. Culton, Morgan, Britain & White (In re Harmon)*, 11 B.R. 162 (Bankr.N.D.Tex.1980), another case under the Packers and Stockyards Act, the court allowed the plaintiff to recover from the unearned portion of a retainer paid to an attorney from the time the attorney had actual notice of the trust. In *Lyng v. Frydman*, No. 86–1210Y (N.D. Ohio, March 23, 1988), the bank had a loan secured by accounts receivable and inventory of the produce broker. Money paid to the bank was held to be part of the trust and was allowed to be recovered by the plaintiffs. The court stated that this was so because the purpose of the statute was to prevent secured lenders from taking all assets in bankruptcy; the comments and the promulgation of regulations included

---

**2.** This provision was enacted in the wake of large bankruptcies where sellers went unpaid, but banks and financiers as secured creditors were protected. *First State Bank of Miami v.*

*Gotham Provision Co. (In re Gotham Provision Co.)*, 669 F.2d 1000 (5th Cir. Unit B), *cert. denied*, 459 U.S. 858, 103 S.Ct. 129, 74 L.Ed.2d 111 (1982).

the statement that purchasers of trust assets hold secondary interest to the trust beneficiaries; and the PACA cases supported this interpretation. The court concluded that the unpaid seller could recover funds even if they were transferred to a secured creditor. The court held that the bona fide purchaser and holder in due course defenses do not apply because they would make the statute ineffective.[3]

The bona fide purchaser rule balances the public interest in preserving the stability of commercial transactions with the interest of the beneficiaries in the trust funds, and the case law above creates an exception to the general trust law to effectuate the purpose of the statute. Furthermore, the present case is significantly different from most other cases brought under § 499e(c) because the broker is not in bankruptcy and the court does not have control over the assets and its estate. This court is not in a position, as is a bankruptcy judge, to determine the priority of conflicting claims to a fixed amount of money. We are considering the right to the money after the fact, after the money has been distributed and when there is no way to redistribute the funds absent some authority like PACA.

Because of the statutory purpose of protecting unpaid sellers from lenders with security interests and in view of the general trust law described above, the court will allow the plaintiff to recover funds paid to the third-party banks to the extent the banks had actual knowledge of the trust or had a security interest in the trust assets. Otherwise, the plaintiffs must look to the trustee to recover the trust funds and to recover for the breach of fiduciary duty.

1. Application to Trust Company Bank.

Trust Company Bank's motion for summary judgment is GRANTED because the loans were not secured by any kind of security interest in trust assets. Furthermore, there is evidence that the bank did not know that the money it received was the proceeds from the liquidation of trust property or commingled with such proceeds. Butler Affidavit, ¶ 8. A bank is deemed to have constructive knowledge of a trust a federal statute creates. *Gotham*, 669 F.2d at 1011. The legislative history of the statute states that the trust provision would not be a burden on lending institutions because "[t]hey will be known to and considered by prospective lenders in extending credit." H.R.Rep. No. 543, p. 4, *reprinted in* 1984 U.S.Code Cong. & Admin.News at 407. However, under ordinary trust principles, constructive notice should not be imputed to a recipient of money unless there are circumstances such that the person should know that the money was derived from the sale of trust property. Not all commodities sold by a broker will be under trust. So, it is insufficient to impute knowledge of a trust where there is no security interest and where the only showing is that the money could be the proceeds of the sale of trust property. If, however, from facts known to the bank about the affairs of its customers there is a high probability that all or a part of the funds must have come from the proceeds of the sales of property in which a trust was perfected, then the bank must demonstrate the existence of sufficient non-encumbered cash sources before it can retain the money payments. Here, there is no evidence that Trust Company had any no-

---

**3.** Another case of interest is *Forestwood Farm, Inc. v. Tanner* (*In re Tanner*), 77 B.R. 897 (Bankr.N.D.Ala., 1987), a bankruptcy case under PACA. Before the court dismissed the case for lack of subject matter jurisdiction, the court discussed its reasoning as to why the court concluded that PACA does not authorize a plaintiff to trace funds into the hands of a third party who has no knowledge of the trust and who receives the money for payment of antecedent debts. The court noted that *Gotham* and *G & L* both had third parties with security interests in the trust funds, which was exactly what Con-

gress intended to remedy in enacting § 499e. The court stated that these cases and the statutory language do not give an independent cause of action against companies who render services and receive payment from the trustee. The court concluded that it is the fiduciary duty of the broker to ensure that there are sufficient funds to pay the sellers, and if the broker breaches that duty, the remedy is to go against the broker. The court also pointed out that explanations to the regulations say that trust assets are available for other uses.

tice that things were out of the ordinary with its customer's affairs. Trust Company Bank's motion for summary judgment is therefore GRANTED.

   2.   Application to Trust Company Bank of Clayton County.

Two loans from Trust Company Bank of Clayton County were to purchase automobiles, and the only collateral for these two loans were the automobiles. The third loan from Trust Company Bank of Clayton County, a renewal of four prior notes, was secured by a security interest in all property of B.H. Produce, including certificates of deposit, equipment, accounts receivable, and inventories, and was guaranteed by Georgia Ann and O.A. Harmon.

■ Trust Company Bank of Clayton County's motion for summary judgment is GRANTED as to the proceeds paid on the two car loans because these loans were not secured by any trust assets and because there is no showing that the bank was on notice that monies it received were likely derived in whole or in part from trust funds. The plaintiffs are entitled to recover payments made to Trust Company Bank of Clayton County on the August 6, 1985 loan because that loan was secured by accounts receivable and inventories, which will almost always contain some trust assets.[4] This is precisely the situation sought to be remedied under § 499e(c)(1).[5]

B.H. Produce made payments of $102,716.79 to Trust Company Bank of Clayton County on the August 6th loan between May 15, 1986 and October 6, 1986. On May 19, 1986 the bank released a certificate of deposit of $25,000 as collateral on the loan. This amount was deposited in B.H. Produce's corporate account.

There is no evidence of the source of the monies used to make these payments to the bank. The debtor defendant, however, has the burden of showing which assets are not subject to the trust. *In re Fresh Approach*, 51 B.R. at 412. As the complaint states that trust funds were paid to the banks to reduce their outstanding loans, the trust proceeds are presumed to have been used to pay the loans absent a showing to the contrary. The defendants have shown that a $25,000 certificate of deposit was deposited into the corporate account, and that the payments on the loan were made from that corporate account. This $25,000, which was the individual property of Georgia Ann Harmon, is not trust proceeds, and this amount paid cannot be attributed to trust assets. Therefore, a total of $77,716.79 was paid to Trust Company Bank of Clayton County with trust funds.

Plaintiffs urge the court to require the banks to refund all of the payments to plaintiffs, but ignore the problem of demonstrating the source of the payments. Commingling of trust assets is contemplated by the statute, 7 CFR § 46.46(c), but this means only that the supplier is not required to trace the proceeds from its commodities through the trust fund. *Gotham*, 669 F.2d at 1010; *In re Fresh Approach*, 51 B.R. at 412. The court must look to the trust assets as defined by statute, which provides that a trust is created in "[p]erishable agricultural commodities received by a commission merchant, dealer,

---

**4.** It is reasonable to suppose that inventory and accounts receivables contain trust assets because in many cases payment for the commodity is not due during the duration of the period when the products remain unsold or the receivables unpaid, and presumably some suppliers will have perfected trusts. With cash accounts, however, the probability that there are other sources generated by unencumbered cash flow, retained earnings, borrowings, and proceeds from the sale of non-perishable commodities is great enough so that ordinarily it would be unfair and insupportable to create an inference of notice concerning the source of the funds.

**5.** It is true that Congress did not intend the broker or dealer to use trust funds to buy luxury

cars. However, this is not the issue here. Whether the plaintiffs can recover funds paid to the bank depends on whether the bank was paid with trust funds and whether the bank was without notice of the trust or was not a secured lender with security in trust assets. The plaintiffs' argument that the court can reach all the money to whomever it is paid is unreasonable without taking into consideration the knowledge of the third person, their good faith belief that they are pursuing a normal commercial transaction, and the intent of the statute in protecting sellers and suppliers from hidden financing arrangements.

or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products...." 7 U.S.C. § 499e(c)(2). There is no obligation in the statute for the broker or dealer to hold *all* his property in trust for the benefit of the unpaid sellers. Only payments which can be traced to pools of trust assets can rightfully be restored to plaintiffs.

■ The total claims asserted in this action by plaintiffs total $227,476.60. Plaintiffs' Exhibit I. Clearly, this total claim cannot be met by the $77,716.79 which is subject to the trust. Where there is not enough money to fulfill all claims, a pro rata distribution is appropriate. *J.R. Brooks & Son v. Norman's Country Market*, 98 B.R. 47, 51 (Bankr.N.D.Fla.1989); *Finest Fruits v. Korean Produce Corp.*, No. 87–6579 (S.D.N.Y. Sept. 5, 1988) (also available at 1988 WL 96028 and 1988 US Dist.Lexis 9908). *See also* 49 Fed.Reg. 45735–36 ("Where a court is involved USDA would recommend that the available trust assets be distributed on a pro-rata basis to all beneficiaries who have protected their rights to benefits."); *Allied Grocers Co-operative, Inc. v. United Fruit & Produce Co. (In re United Fruit & Produce)*, 86 B.R. 14 (D.Conn.1988).

### D. *Plaintiff's Claims*

In order to preserve the benefits of the trust, a claimant must file a notice of intent to preserve the benefits of the trust with the dealer or broker and the Secretary within thirty calendar days of the date payment was due. 7 U.S.C. § 499e(c)(3). The date of payment is defined as either the date as required in the regulations, or a time as the parties have expressly agreed to in writing before entering into the transaction. 7 U.S.C. § 499e(c)(3)(i), (ii).

The enabling regulations provide for the content required in the notice. 7 C.F.R. § 46.46(g). The notice must be in writing, given to the debtor, and filed with the Secretary within thirty calendar days of the date of payment. The notice must be in writing, must include a statement that it is a notice of intent to preserve trust benefits, and include the name and address of the trust beneficiary, the date of the transaction, the commodity, the contract terms, invoice, the price and date payment due, and the amount past due and unpaid. 7 C.F.R. § 46.46(g)(3).

1. Receipt of Notices by B.H. Produce.

■ The defendant contends that the plaintiff has not shown that the notices were properly addressed, had sufficient postage, and were deposited in the mail to create an inference that they were received by B.H. Produce. Defendants also present the affidavits of Georgia Ann Harmon and Juanita Cox, which essentially say that they, acting as secretary and treasurer, and bookkeeper, respectively, for B.H. Produce, never received any notice of intent to preserve trust benefits from any of the plaintiffs in this action, and that no notices of intent to preserve trust benefits by plaintiffs are located in the corporate records of B.H. Produce.

Plaintiff has presented evidence that the notices were either mailed with sufficient postage or hand-delivered to B.H. Produce. There is no dispute that the USDA received each notice, and there is no dispute about the dates that the USDA received the notices. Plaintiff attacks the Cox affidavit, arguing that because there is no statement that she was authorized or had the responsibility of processing any mail, the fact that she did not receive any notices does not mean that notices were not received. Plaintiff points out that the only direct evidence of whether notices were received is that of Mr. Hansen, manager of C.H. Robinson Company, who states that he hand-delivered copies of the trust notices for C.H. Robinson to O.A. Harmon. At that time, Mr. Hansen testifies Mr. Harmon said that "he gets all kinds of these notices and that, 'these things aren't worth the paper they're printed on.'" Hansen Affidavit in Support of Plaintiffs' Opposition to Defendants' Motion, ¶ 4.

The facts discussed above, reveal that a question of fact remains as to whether

B.H. Produce received the notices. There is evidence that they were mailed or hand-delivered, and that the USDA received the notices. The Hansen affidavit also creates a strong suspicion that if the notices were received, they were not accorded the consideration they deserved. However, the Cox and Harmon affidavits saying that the notices were not received by them and are not in the corporate records create a factual issue unresolvable in a motion for summary judgment under Rule 56. The plaintiffs' arguments on the validity of Cox's statements, while well taken, do not eliminate the statement that no notices were received and the resulting factual issue which must be resolved by the trier of fact. Neither motion for summary judgment can be granted. However, because the issues for trial can be further refined, the adequacy of the notices will be examined.

2. Timeliness and Sufficiency of Notices.

█ Defendants contend that several plaintiffs did not file their notices of intent within the required time, and that the content of these notices were insufficient. The USDA certified the timeliness and sufficiency of the notices. See Frazier Affidavit. This certification by the USDA is persuasive in the absence of other evidence, but is not binding on the court if evidence shows that the notices were not in compliance with the statute. The notice, in the absence of a written agreement, must be filed within forty days of the date of delivery.[6]

(a) Timeliness of Notices.

*C.J. Brokerage*

C.J. Brokerage made two sales to B.H. Produce, on April 16, 1986 and May 1, 1986, for a total claim of $16,030. Plaintiff has presented evidence that this was an FOB sale, and that B.H. Produce received the goods fourteen to sixteen days after the date of sale. Delivery, therefore, would be between April 30 and May 2, and May 15 and May 17. Notice was received by USDA on May 30, 1986 and June 6, 1986, respectively. The notices were therefore timely, as they were within forty days of the delivery date.

*General Produce, Inc.*

General Produce sold commodities to B.H. Produce on twenty-two different occasions between August 20, 1986 and October 14, 1986. The notice of intent to preserve trust benefits was received on October 17, 1986 for all of the transactions, and is therefore effective to preserve trust benefits for deliveries from September 7 forward. The total of the transactions prior to September 7 was $12,927.50. This amount is not covered by the trust benefits. The rights to trust benefits in the remaining $17,568 has been preserved.

*Six L's Packing Company*

| Invoice Date | Amount | Shipping Date | Received | Notice Date |
|---|---|---|---|---|
| 8/4/86 | $9,680.00 | 7/28/86 | 7/29 or 7/30 | 9/22/86 |
| 8/13/86 | 9,022.50 | 8/5/86 | 8/6 or 8/7 | 9/22/86 |
| 8/29/86 | 8,320.00 | 8/21/86 | 8/22 or 8/23 | 10/9/86 |
| 9/2/86 | 8,948.00 | 8/26/86 | 8/27 or 8/28 | 10/9/86 |

█ The notices for all the shipments were received more than forty days after the date of delivery, and are untimely. The goods received July 30 would have to have a notice September 8. The goods received August 7 would require a notice September 16. Both of these shipments were noticed on September 22. The August 23 shipment notice would be due October 2, and the

---

**6.** Payment is due ten days from date of delivery, 7 C.F.R. § 46.2(aa), and notice is due thirty calendar days from date payment is due. 7 U.S.C. § 499e(c)(3).

August 27 shipment's notice would be due October 6. Both these notices were filed October 9. Therefore, even though the USDA certified that these notices were valid, they are still untimely under the statute.

The plaintiff points out that the invoice contained payment due dates that were thirty days from the shipment date (August 27, 1986, September 4, 1986, September 20, 1986, and September 25, 1986). However, an agreement to accept payment at a time other than that as provided under the regulations must be expressly agreed to in writing before entering into the transaction. 7 USC § 499e(c)(3); 7 C.F.R. § 46.46(f)(1). The invoice dates do not qualify as a written agreement under the statute. This is not an express written agreement, as one party, B.H. Produce, remains silent as to these terms. Moreover, this was not an agreement that was reduced to writing before the transaction occurred as is required by the statute and regulation. There is no other written agreement besides the invoices. Therefore, all of Six L's notices to preserve trust benefits are untimely, and Six L's claims do not qualify for trust protection.

### Spada Distributing

Spada Distributing made one shipment to B.H. Produce dated September 2, 1986. This would have been received fifteen to seventeen days after the sale, and the notice was filed October 21. This is timely under the statute.

### Georgia Tomato

Defendant points out that Georgia Tomato has provided no evidence whatsoever as to the date of receipt by B.H. Produce of Georgia Tomato's shipments. However, the sales to B.H. Produce were on October 9, 1986 and October 13, 1986. The notice was filed on October 28. Even if the goods were received the same day as the sale, the notice would be timely.

### (b) Sufficiency of Notices.

Defendants further contend that both C.J. Brokerage and General Produce did not indicate on their notices the date that payments were due. This does not render the notices defective. Pursuant to the regulations, payment was due within ten days of receipt of the goods, so this omission is not fatal. Defendant further contends that the notice by Spada Distributing does not include the invoice price of the commodity. However, a review of the notice shows that it does include the invoice price of the commodities. See Exhibit 2 to Plaintiffs' Exhibit II–H.

### E. *Summary of Claims*

There is no further attack by defendants on the sufficiency or timeliness of the other plaintiffs' notices. Therefore, they are due the full amount certified by the USDA. The following table summarizes the amounts due to plaintiffs, and the percentage of the total that this comprises.

| Plaintiff | Amount of Claim | Percentage of Total Claims |
|---|---|---|
| C.H. Robinson Co. | $ 71,833.90 | 37.5% |
| Burnett Produce Co. | 24,321.20 | 12.7% |
| C.J. Brokerage | 16,030.00 | 8.4% |
| C.L. Fain Co. | 29,644.00 | 15.5% |
| General Produce | 17,568.00 | 9.2% |
| Georgia Tomato Co. | 2,044.00 | 1.1% |
| Golman–Hayden Co. | 9,790.00 | 5.1% |
| Spada Distributing Co. | 20,275.00 | 10.6% |
| Six L's Packing Co. | 0 | 0 |
| TOTAL | $191,506,10 | 100.0% |

The plaintiffs, therefore, are entitled to a portion of the funds paid to Trust Company Bank of Clayton County subject to the trust, $77,716.79, on a *pro rata* basis as set out in the table, subject to a jury determination of whether B.H. Produce received the plaintiffs' notices.

### III. CONCLUSION.

Defendant Trust Company Bank's motion for summary judgment is GRANTED in full. Defendant Trust Company Bank of Clayton County's motion for summary judgment is GRANTED IN PART and DENIED IN PART. The defendants prevail on their assertion of the bona fide purchaser defense to the extent the loans given to B.H. Produce were not secured by trust assets (inventories and receivables). Trust Company Bank of Clayton County's liability is limited therefore to $77,716.19. Trust Company Bank of Clayton County's motion for summary judgment is GRANTED as to plaintiff Six L's Packing Company, because Six L's notices to preserve trust benefits were filed untimely. The motion for summary judgment is also GRANTED IN PART against plaintiff General Produce, whose claims are protected by the trust only to the extent of $17,568. Plaintiffs' motion for summary judgment and Trust Company Bank of Clayton County's motion for summary judgment are DENIED because a question of fact remains on whether B.H. Produce received the notices as required under the statute. If the plaintiffs succeed in showing delivery of the notices, the plaintiffs are entitled to a *pro rata* share of the funds as shown in the table above.

SO ORDERED.