**In re JOHN DeFRANCESCO & SONS, INC., Debtor.**

**Bankruptcy No. 89–11319–HAL.**

United States Bankruptcy Court, D. Massachusetts.

Jan. 9, 1990.

Jeffrey A. Schreiber, Schreiber & Associates, Salem, Mass., for debtor.

Gladys Shapiro, Boston, Mass., for S. Strock & Sons.

Donald W. Murray, John E. Fedele, P.C., Dedham, Mass., for Gold Bell, Inc.

*Findings of Fact and Memorandum of Law: The need to comply strictly with the statutory requirements in establishing a trust under the Perishable Agricultural Commodities Act.*

HAROLD LAVIEN, Bankruptcy Judge.

A seller of perishable agricultural commodities has moved for turnover against a Debtor by invoking 7 U.S.C. 499e(c), the Perishable Agricultural Commodities Act, which, under certain conditions would create a trust in certain proceeds. Because the movant has not complied specifically and exactly with the terms of the statute, it cannot enforce its rights to have such a trust formed.

The Debtor, John DeFrancesco and Sons, Inc. ("Debtor") processors and distributors of perishable agricultural commodities, filed for protection under Chapter 11 on May 15, 1989. Between March 29, 1989 and May 3, 1989 Debtor made purchases of produce from Gold Bell, Inc. ("Gold Bell") in the total amount of $4,983.50. (For a specific listing of invoices, see Addendum "A".)

Creditor Gold Bell, a licensed dealer in perishable commodities, as it is defined in the Perishable Agricultural Commodities Act ("PACA") has filed a motion for relief from stay and turnover of the trust property which would not be part of the Debtor's estate. On April 25, 1989 and June 5, 1989 it filed written notice with the United States Department of Agriculture, with purportedly a c.c. to John de Francesco individually but not to the debtor corporation, of its intention to preserve trust benefits under PACA. Gold Bell relies on PACA, 7 U.S.C. §§ 499e(b) and (c) which establish that a creditor may seek to preserve the benefits of a trust established under that title. The Court, in a similar case, explained that "[i]n a 1984 amendment to PACA, Congress had provided for

imposition of a trust on certain assets of a defaulting buyer of perishable agricultural commodities in favor of sellers supplying the produce on a 'cash' or 'short-term' basis." *In re Davis Distributors, Inc.*, 861 F.2d 416 (4th Cir.1988).

█ The trust is described as being a non-segregated floating trust consisting of all perishable commodities of the commissioned merchant together with accounts receivable and proceeds from the sale of such commodities with such trust held for the benefit of the unpaid suppliers. *J.R. Brooks & Son v. Norman's Country Market*, 98 B.R. 47 (Bkrtcy.N.D.Fla.1989). The corpus of a secured PACA trust is an equitable interest and is not considered part of the debtor's estate. *In re Fresh Approach*, 51 B.R. 412, 419 (Bkrtcy.N.D.Tex. 1985). The property held in trust properly belongs to the trust beneficiary and doesn't become part of the bankruptcy estate. Since the property is outside the estate, the beneficiary is entitled to priority ahead of all other creditors. *In re Super Spud, Inc.*, 77 B.R. 930, 931 (Bkrtcy.M.D.Fla. 1987).

The language 7 U.S.C. § 499e is quoted below in pertinent part:

**(b) Remedies**

Such liability may be enforced either (1) by complaint to the Secretary as hereinafter provided, or (2) by suit in any court of competent jurisdiction; but this section shall not in any way abridge or alter the remedies now existing at common law or by statute, and the provisions of this chapter are in addition to such remedies.

**(c) Trust on commodities and sales proceeds for benefit of unpaid suppliers, sellers or agents; preservation of trust; jurisdiction of courts**

(2) Perishable agricultural commodities received by a commission merchant, dealer or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds for the sale of such commodities or products, shall be held by such commission merchant, ... in trust for the benefit of all unpaid suppliers or sellers ... until full payment of the sum owing in connection with such transactions has been received by such unpaid suppliers.... Payment shall not be considered to have been made if the supplier ... receives a payment instrument which is dishonored....

(3) The unpaid supplier ... shall lose the benefits of such trust unless such person has given written notice of intent to preserve the benefits of the trust to the commission merchant, ... and has filed such notice with the Secretary within thirty calendar days (i) after the expiration of the time prescribed by which payment must be made, as set forth in regulations issued by the Secretary. (ii) after expiration of such other time by which payment must be made, as the parties have agreed to in writing before entering into the transaction, or (iii) after the time the supplier, seller, or agent has received notice that the payment instrument promptly presented for payment has been dishonored....

Gold Bell avers that it has met all the provisions of the statute. Debtor argues that Gold Bell's notice was defective and that therefore the filing was invalid.

█ The statute is intended to protect sellers selling on a short term cash basis by requiring the buyer to meet its obligation promptly. In most cases, buyers must pay for shipped commodities within ten days after receipt of the produce. *See* 7 CFR § 462(aa)(ii) cited in *Davis, supra.* Another applicable regulation states that the maximum payment period on which a buyer and seller may agree is "30 days" after the buyer's receipt and acceptance of the commodity. 7 C.F.R. 46.46(f)(2). However, the statute requires that the parties have "express[ ] agree[ment] to *in writing before entering into the transaction*" and this does not seem to have happened here. *See* 7 U.S.C. § 499e(c)(3)(ii) *supra*, emphasis added. Cited in *In re Lombardo Fruit & Produce*, 106 B.R. 593 (Bkrtcy.E.D.Mo. 1989).

Gold Bell may have attempted to conform to the statute's requirement. Each of

its invoices has the word "Terms" printed on it, and "30 days" typewritten in the appropriate box. However, in order to preserve its PACA trust benefits under the statute, Gold Bell must prove that it strictly complied with all the necessary statutory requirements. By not offering evidence of an agreement *in writing before the transaction was entered into*, Gold Bell fails to meet its burden of proof that it strictly complied with the statute. This, in fact, was the specific holding of *In re Lombardo, supra.*

Gold Bell made two filings with the Department of Agriculture, one on April 25, 1989 and the other on June 5, 1989, (assuming the date if mailing can be considered the filing date) to attempt to protect its interest in the debts incurred between March 29, 1989 and May 3, 1989. The statute says that filing shall be made within thirty days after the statutory payment period, in this case ten days, that is, within forty days after the date the obligation is incurred. *See* 7 U.S.C. 499e(c)(3) *supra.* Two invoices listed on Addendum "A" (*infra*) are therefore improperly listed.

■ Debtor raises another issue: because Gold Bell notes on its demand letters that copies were sent to one of Debtor's principals, John de Francesco, individually and without identifying this debtor, to a box number in Salem, Mass., and there is no evidence that the required notice was timely given to this debtor.

It is worth noting here that all the Gold Bell invoices were addressed merely to "John de Francesco" and not to the corporate debtor. Without deciding the issue, this may well give Gold Bell a claim against de Francesco individually, but without more, does not make Gold Bell a creditor of this debtor. In fact, from the invoices and from Gold Bell's brief it is not clear that Gold Bell was even aware of the corporation or intended to deal with it. *See In re Kaiser Steel Corp.*, 105 B.R. 639 (Bkrtcy.D.Colo.1989) for liability of agent for undisclosed principal.

The language of section 499e(c)(3) is unambiguous on its face. Therefore, judicial inquiry is complete "unless exceptional circumstances dictate otherwise...." *Burlington Northern R.R. Co. v. Oklahoma Tax Comm'n*, 481 U.S. 454, 107 S.Ct. 1855, 1860, 95 L.Ed.2d 404 (1987) (citations omitted). The statute clearly states that the seller shall lose the trust benefits unless such person has given written notice of intent to preserve benefits of the trust *to the commission merchant, dealer or broker* and has filed such notice with the Secretary.... (Emphasis added). The statute clearly requires the seller to give written notice to the buyer. *In re Marvin Properties, Inc.*, 854 F.2d 1183, 1186 (9th Cir. 1988.) Although this is the only case cited by the plaintiff, it actually supports the defendant. Gold Bell has not offered evidence that notice was given and received, by the debtor, and therefore it does not meet the requirements of the statute, which requires strict compliance. *In re Lombardo, supra.*

■ While not essential to this holding, it should be noted that the trust would only attach to proceeds derived from perishable agricultural commodities and no proof was offered that this was debtor's only source of income or that any viable trust res existed. See by analogy the Supreme Court's holding that the I.R.S. statutory trust fund in 26 U.S.C. 7501(a) could not be imposed on non-traceable funds. *Slodov v. U.S.*, 436 U.S. 238, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978) as most recently interpreted by Judge Kenner. *In re Malmart Mortgage Company, Inc.*, 109 B.R. 1 (Bkrtcy.D.Mass. 1989). *Lawyers Weekly*, Jan. 8, 1990 No. BA 31.

Gold Bell's motion for turnover is denied.