In the Matter of UNITED FRUIT AND PRODUCE CO., INC., Debtor.

Bankruptcy No. 2–87–00049.

United States Bankruptcy Court, D. Connecticut.

Sept. 14, 1990.

Vincent M. DeAngelo, Cooney, Scully and Dowling, Hartford, Conn., for movant, Allied Grocers Co–Op., Inc.

Martin W. Hoffman and Douglas J. McDade, Hartford, Conn., for trustee.

MEMORANDUM AND ORDER RE: MOTION FOR DISPOSAL OF PROPERTY PURSUANT TO 11 U.S.C. § 725

ROBERT L. KRECHEVSKY, Chief Judge.

I.

Bankruptcy Code § 725 provides that a trustee in a chapter 7 case "after notice and a hearing, shall dispose of any proper-

ty in which an entity other than the estate has an interest, such as a lien, and that has not been disposed of under another section of this title." Allied Grocers Co–Operative, Incorporated (Allied) has moved the court, allegedly pursuant to § 725, for an order to require the trustee of United Fruit & Produce Co., Inc. (United), the chapter 7 debtor, either to turn over certain proceeds in full to Allied, or, in the alternative, to pay Allied its pro rata share of the proceeds, all without any deduction for trustee fees or costs. Because the proceeds in issue come within the provisions of the Perishable Agricultural Commodities Act (PACA), 7 U.S. C.A. § 499a–499t, resolution of Allied's motion requires, in part, reconciling PACA provisions with those of the Bankruptcy Code.

The impact of PACA on this bankruptcy case has been the subject of a prior ruling of the court. In *Allied Grocers Co–Operative, Inc. v. United Fruit & Produce Co., Inc. (In re United Fruit & Produce Co., Inc.)*, 86 B.R. 14 (Bankr.D.Conn.1988), I ruled that under the circumstances therein outlined a chapter 7 trustee should collect accounts receivable of the debtor, notwithstanding a PACA trust was being asserted against them, and that the bankruptcy court would determine the rights of all parties claiming an interest in the receivables. The net effect of that ruling was to require the account payor of an account receivable to make payment of that receivable to the debtor's estate rather than to permit Allied, a creditor that prepetition had garnished such account debtor, to enforce its garnishment. Questions left unresolved by that ruling are now posed by the present motion.

## II.

### A.

The court, on February 24, 1987, entered an order for relief on an involuntary petition against the debtor. The debtor, a distributor of fresh fruit and produce, had been licensed as a PACA broker by the United States Department of Agriculture (USDA). "One of the primary concerns of the [PACA] legislation is the status of unpaid sellers at the time of a broker's bankruptcy or insolvency." *C.H. Robinson Co. v. B.H. Produce Co., Inc.*, 723 F.Supp. 785, 791 (N.D.Ga.1989). Congress in PACA sought to respond to this concern by providing on behalf of unpaid sellers of perishable agricultural commodities that any receivables or proceeds from the sale of the commodities "shall be held by such ... broker in trust for the benefit of all unpaid suppliers or sellers of such commodities ... until full payment ... has been received...." 7 U.S.C.A. § 499e(c)(2) (West Supp.1990). Unpaid suppliers must file notices of intent with the Secretary of Agriculture and with the broker within certain time limits to preserve the trust benefits. 7 U.S.C.A. § 499e(c)(3) (West Supp.1990). The PACA statute grants trust beneficiaries priority over parties holding perfected security interests in the trust property. *See Frio Ice, S.A. v. Sunfruit, Inc.*, 724 F.Supp. 1373, 1377 (S.D.Fla.1989). Although subsection (c)(4) provides that U.S. District Courts are vested with jurisdiction to hear "(i) actions by trust beneficiaries to enforce payment from the trust, and (ii) actions by the Secretary to prevent and restrain dissipation of the trust," [1] PACA contains no mechanism for the administration and distribution of trust assets.

Allied, on October 3, 1986, sued the debtor in state court to recover $26,303.35 for goods sold, and later that month garnished Norwalk Co–Op, Inc., (Norwalk) an account debtor of United. The proceeds of the Norwalk receivable amount to approximately $21,000.00 and are now held by the trustee, subject to the right of Allied to assert any priority it allegedly obtained by the garnishment. After the commencement of the bankruptcy case, the USDA, by letter dated April 23, 1987, advised the trustee that 30 unpaid sellers had made timely filings with the Secretary of Agriculture, claiming $528,657.17, of which $389,761.59 "appears to qualify for trust protection." Of the 30 unpaid sellers the USDA letter listed, 20 subsequently filed

---

1. 7 U.S.C.A. § 499e(c)(4) (West Supp.1990).

proofs of claim with this court, totaling $305,759.40, of which amount $186,078.35 apparently qualifies for PACA trust protection status.

**B.**

■ Allied's first contention is that it is entitled to a priority payment in full of its debt based on its garnishment of the Norwalk receivable more than 90 days prior to the commencement of the debtor's bankruptcy case. To date, all courts which have addressed the question of claimed priority between PACA beneficiaries have ruled that a pro rata distribution is required to trust beneficiaries when there are insufficient trust assets to meet the trust obligations. *See J.R. Brooks & Son, Inc. v. Norman's Country Market, Inc.,* 98 B.R. 47, 51 (Bankr.N.D.Fla.1989); *C.H. Robinson Co. v. B.H. Produce Co., Inc.,* 723 F.Supp. 785 (N.D.Ga.1989); *Finest Fruits, Inc. v. Korean Produce Corp.,* No. 87–6579 (S.D.N.Y. Sept. 6, 1988) (1988 W.L. 96028 and 1988 U.S.Dist. LEXIS 9908).[2] The *Finest* court specifically ruled against Allied's position of being prior in time when it held that "the purpose of the trust [is] to protect all unpaid sellers or suppliers of agricultural commodities. A race to the courthouse with winner take all does not seem to accord with this." I concur with these holdings, and, accordingly, Allied may not receive payment in full as the trust *res* is inadequate to pay all trust claimants.

**C.**

■ Allied next asserts that if the court does not allow its claim of priority based on the garnishment, a simplistic pro rata distribution is inequitable and only diligent PACA beneficiaries who participated in the bankruptcy case should be allowed to share. The Bankruptcy Appellate Panel of

the Ninth Circuit in *C & E Enterprises, Inc. v. Milton Poulos, Inc. (In Re Milton Poulos, Inc.),* 107 B.R. 715 (Bankr. 9th Cir.1989), held that PACA beneficiaries do not have to participate in the bankruptcy proceeding in order to share in the PACA trust distribution. That court relied on the "plain language" of 7 U.S.C.A. § 499e providing for "distribution to all supplier creditors who perfect their rights." 107 B.R. at 718. In *Poulos,* as here, the USDA had furnished a letter listing the PACA beneficiaries and the amounts of their PACA claims. As noted, here 20 of 30 claimants have also filed proofs of claim. While it certainly is preferable for PACA creditors to file proofs of claim in bankruptcy cases, if only to share in possible non-PACA estate funds and to facilitate the examination of their claims, I hold, in line with the reasoning of *Poulos,* that creditors who have complied with PACA requirements are entitled to share in the PACA funds held by the debtor's estate. This does not mean that the estate trustee should forego his obligation to examine claims to verify a claimant's eligibility to share in the amount sought. *See In re John DeFrancesco & Sons, Inc.,* 114 B.R. 335, 338 (Bankr.D. Mass.1990) (a PACA beneficiary "must prove that it strictly complied with all the necessary statutory requirements"); *C.H. Robinson Co. v. B.H. Produce Co., Inc.,* 723 F.Supp. at 796 (USDA certification of statutory compliance "is persuasive in the absence of other evidence, but is not binding on the court if evidence shows [noncompliance] with the statute.").

**D.**

■ Allied's final contention is that the trustee "should not be allowed to deduct any additional fees or expenses from this fund because PACA assets are not part of the bankruptcy estate."[3] Movant's Memo-

---

**2.** The USDA, itself, in a comment accompanying the rules and regulations promulgated to implement the provisions of PACA, stated: "Where USDA may become involved, an informal distribution would be made on a pro-rata basis to beneficiaries who have perfected their rights to trust benefits. Where a court is involved, USDA would recommend to the court that the avail-

able trust assets be distributed on a pro-rata basis to all beneficiaries who have perfected their rights to trust benefits." 49 Fed.Reg. 45735–6 (1984).

**3.** The holdings to date support Allied's contention that the corpus of a PACA trust is an *equitable interest and not considered part of the*

randum at 5. One court has so held. In *East Coast Potato Distributors v. Grant (In re Super Spud, Inc.)*, 77 B.R. 930 (Bankr.M.D.Fla.1987), the court ruled that the trustee was not entitled to reimbursement for his expenses in collecting PACA funds if the PACA trust claims exceeded the funds which the trustee had collected. The court concluded: "While this result is unfortunate, this court can find no support for the trustee's argument that the PACA claims be subordinated to that of the trustee. Perhaps this is something Congress should address in the future." *Id.* at 932. I respectfully disagree with this conclusion.

As previously noted, PACA contains no mechanism for administering and distributing trust assets. As the present case exemplifies, administration will frequently be required. The bankruptcy trustee of the debtor's estate has rendered substantial services in collecting the PACA receivable for the benefit of the PACA beneficiaries and in contesting Allied's claim that it is entitled to a priority payment from this asset. Further, the trustee has an obligation to examine all claims made to share in the receivable proceeds. The non-PACA creditors of this estate should not pay for these services and the trustee should not be forced to donate them.

Upon the filing of the bankruptcy case, the trustee became the de facto trustee of the PACA trust. Ordinary, well-settled trust law furnishes the basis for compensating a trustee, unless the document (or the legislation, as in this case) establishing the trust otherwise provides. Section 242 of the Second Restatement of Trusts (1959) reads: "Except as stated in section 243,[4] the trustee is entitled to compensation out of the trust estate for his services as trustee, unless it is otherwise provided by the terms of the trust or unless he agrees to forego or waives compensation." *See, North Dakota Public Service Comm'n v. Valley Farmers Bean Ass'n*, 365 N.W.2d 528, 548 (N.D.1985) (Where state legislation created a statutory trust for the benefit of depositors of grain in cases where grain warehousemen became insolvent, and the court appointed the Public Utility Commission trustee to administer such trust, the Commission was entitled to reimbursement for its expenses, notwithstanding the lack of clear statutory authority for compensating the trustee.); *Laudan v. ABC Travel System, Inc.*, 64 N.J.Super. 204, 165 A.2d 568 (N.J.Super.Ct.Ch.Div.1960) (Where contracts between passenger carriers and travel agent created trust fund comprised of ticket proceeds for the benefit of unpaid carriers, the court appointed a receiver for insolvent travel agent to collect proceeds and examine claims, and ruled that the receiver was entitled to compensation from the fund for such services.); *Bissell v. Butterworth*, 97 Conn. 605, 615, 118 A. 50, 54 (1922) (Where state statute created trust fund for the benefit of war veterans, their widows or dependent children but did not provide for payment of trustee's expenses in performance of its duties, the court held that the trustee was entitled to fair compensation and that the trust was liable for "the necessary expenses of its execution.").

I conclude that the trustee will be entitled to reasonable compensation out of the PACA proceeds for necessary services he provides which only benefit PACA creditors.[5]

---

debtor's estate; *see* Code § 541(d); *In re John DeFrancesco & Sons, Inc.*, 114 B.R. 335, 337, and cases cited. The rulings are typically made to confirm that the trust beneficiaries are entitled to priority ahead of all other estate creditors and are not to be assessed for *general administrative* expenses. *See e.g., In re Fresh Approach, Inc.*, 51 B.R. 412 (Bankr.N.D.Tex.1985).

**4.** Section 243 concerns trustee's breach of trust.

**5.** Two decisions—*In re Super Spud, Inc.*, 77 B.R. 930, 931 (Bankr.M.D.Fla.1987) and *In re John DeFrancesco & Sons, Inc.*, 114 B.R. 335, 337

(Bankr.D.Mass.1990)—refer to a "secured PACA trust," without discussion as to why the word "secured" is added. I believe the use of "secured" is appropriate since the effect of PACA is to give unpaid sellers an interest in property to secure payment of a debt, provided a timely filing is made to perfect that interest. All of these elements sound like an interest traditionally more akin to a lien than a trust. *See* Bankruptcy Code § 101(33) ("'lien' means charge against or interest in property to secure payment of a debt or performance of an obligation"). An alternate ground for the ruling concerning assessing charges against the PACA

14

## III.

For the reasons stated, Allied's motion is granted in part and denied in part. The trustee shall take the necessary actions to determine which of the assets he holds, in addition to the Norwalk proceeds, are PACA trust funds, and to then make a pro rata distribution to qualified claimants. The trustee may, prior to such distribution, file a request for approval of reasonable compensation payable out of said funds. It is

SO ORDERED.

fund for benefits received is the application of Bankruptcy Code § 506(c) ("The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim."). *Cf.* 4 *Collier on Bankruptcy* ¶ 67.25[2] (14th ed. 1978) ("[T]he statutory trust is no more than a legislative device to protect a particular class of creditors … [and] there is reason for treating the statutory trust in the same way as [its] functional equivalent, the statutory lien, so far as bankruptcy is concerned.").