In re Tom Neely TANNER, aka dba
Tom Tanner, the Tanner
Company, Debtor.

FORESTWOOD FARM, INC., Plaintiff,

v.

Tom TANNER, et al., Defendants.

Bankruptcy No. 86–09462.
Adv. No. 87–0099.

United States Bankruptcy Court,
N.D. Alabama, W.D.

July 21, 1987.

David R. Arendall, Birmingham, Ala., for plaintiff, Forestwood Farm, Inc.

Mary Beth Cavert, Tuscaloosa, Ala., for defendant/debtor, Tom Neely Tanner.

George Case, Adger, Ala., for defendants, Dixieland Produce and Wayne C. Stone dba Stone Produce.

Albert G. Lewis, III, Tuscaloosa, Ala., for defendant, Parkview Shell Auto Service.

Joel R. Chandler, Tuscaloosa, Ala., for defendant, Don Price.

Walter L. Blocker, III, Birmingham, Ala., for defendant, Yarbrough Produce Co.

Claude M. Burns, Jr., Tuscaloosa, Ala., for defendant, Roy Eugene Terry.

Romaine S. Scott, III and Robert L. Shields, III, Birmingham, Ala., for defendant, Alabama Power Co.

Charles H. Barnes, Asst. Atty. Gen., Montgomery, Ala., for defendant, Shipping Point Inspection Fund of the State Dept. of Agriculture and Industries of the State of Ala.

H. Vann Waldrop, Tuscaloosa, Ala., for defendant, South Cent. Bell.

Amy Watson Stewart, Birmingham, Ala., for defendant, Alabama Gas Corp.

Robert P. Reynolds, Tuscaloosa, Ala., for defendant, First Alabama Bank.

Robert C. Tanner, Tuscaloosa, Ala., for defendant, Wase Management of Alabama, Inc. dba Indec.

Walter C. Crownover, Tuscaloosa, Ala., Trustee.

## MEMORANDUM OF DECISION

GEORGE S. WRIGHT, Chief Judge.

This matter came before the Court for a second pre-trial hearing on the complaint filed by Forestwood Farm, Inc. (hereinafter the Plaintiff).[1] At the hearing, the Court heard arguments on various motions to dismiss for lack of jurisdiction.[2] After consideration of the applicable law, it is the opinion of this Court that the motions to dismiss are due to be SUSTAINED. This opinion shall constitute findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. The Court expressly reserves the right to make additional findings of fact and conclusions of law as may become necessary.

## FINDINGS OF FACT

On November 21, 1986, Tom Neely Tanner, a/k/a Tom Tanner f/d/b/a The Tanner Company (hereinafter the Debtor) filed for relief under Chapter 7 of Title 11 of the United States Code. Prior to the filing of his petition, the Debtor was in the business of buying and selling perishable agricultural commodities. In the course of his business the Debtor purchased produce from numerous suppliers including the Plaintiff, Forestwood Farm, Inc. The present controversy centers around produce supplied by the Plaintiff to the Debtor during the time period of June 1, 1986 to July 11, 1986. It is the Plaintiff's contention that the Debtor failed to pay for the supplies he received from the Plaintiff during this period of time. Instead, the Plaintiff contends that the Debtor used monies received from the sale of the produce supplied by the Plaintiff to pay other creditors.

It is the Plaintiff's contention that the Debtor's actions violated the Perishable Agricultural Commodities Act (PACA) which imposes a statutory trust on all inventories, receivables or proceeds received, by individuals like the Debtor, until suppliers are paid in full.[3] However, at the time of the filing of the Debtor's bankruptcy petition, there existed neither perishable agricultural commodities, accounts receivables from their sale nor funds received in payment thereof. Thus, the question arises—Can the Plaintiff pursue PACA funds into the hands of third party[4] payees

1. According to Mr. Arendall, his decision to file his complaint in this Court was based on two factors. First, this Court was the only Court with jurisdiction over the bankrupt debtor, Tom Neely Tanner. Secondly, Mr. Arendall assets that he was advised by the Department of Agriculture to file his complaint with this Court. Unfortunately, Section 499e(c)(4) of Title 7 is unequivocal in placing jurisdiction in the district court. Thus, the proper procedure would have been to seek and obtain relief from the automatic stay so that an action could be filed at the district court level.

2. Rule 12(h)(3) of the Federal Rules of Civil Procedure provides that *"[w]henever it appears* by suggestion of the parties or otherwise *that the court lacks jurisdiction of the subject matter,* the court *shall dismiss* the action."* (emphasis added).

3. The Plaintiff perfected its rights under the provisions of PACA by filing a timely notice of its intent to preserve its trust benefits.

4. Under ordinary trust principals, a trust beneficiary can trace funds into the hands of third parties. However, this right is burdened with significant restrictions. Among these restric-

who received the funds in payment of antecedent debts for goods or services rendered?

## CONCLUSIONS OF LAW

### JURISDICTION.[5]

The question of a bankruptcy court's jurisdictional base has been the source of much controversy. It is clear that bankruptcy courts' are conferred limited jurisdiction, however the exact extent of the courts' jurisdiction is still subject to much dispute. Section 157 of Title 28 allows a district court to provide for the referral of all (1) cases and proceedings (2) arising in, (3) arising under or (4) related to Title 11 of the United States Code. The district court, under Section 1334 of Title 28, has exclusive jurisdiction over all of the property, wherever located, of the debtor as of the commencement of the bankruptcy case and of property of the bankrupt estate. The district courts have utilized Section 157 to allow the bankruptcy courts to adjudicate disputes involving property of a bankrupt estate. The district courts have accomplished this *apparent* delegation of its "exclusive jurisdiction" because bankruptcy courts are merely units of the district courts.

█ While Section 157(a) of Title 28 allows for the referral of all cases or proceedings arising in, arising under or related to Title 11, the above-styled adversary proceeding does not fit into any of these jurisdictional "pigeon holes". Thus, since there

is no property over which this Court has jurisdiction, this Court does not have jurisdiction over the non-bankrupt defendants. In addition, the Court lacks jurisdiction over the "dischargeability complaint" under Section 523(a)(2), (4) or (6) because the complaint was not filed within 60 days after the Section 341(a) meeting of creditors. See Section 523(c).[6]

## HISTORY OF PACKERS AND STOCKYARDS ACT 1921 7 U.S.C. SECTION 181 ET SEQ.

In 1921 Congress enacted particular amendments which came to be known as the Packers and Stockyards Act. Then in 1976, Congress, by enacting the statutory trust enlarged the impact of the Packers and Stockyards Act. The new provisions of the Act imposed a trust on three classes of property as follows:

(1) "All *livestock* purchased by a packer in cash sales, and"

(2) "all *inventories* of, or"

(3) "*receivables* or *proceeds* from most meat good products, or livestock products derived therefrom."

## HISTORY OF PERISHABLE AGRICULTURAL COMMODITIES ACT, 1930 (PACA) 7 U.S.C. SECT. 499a ET SEQ.

tions is the rule (commonly referred to as the bona fide purchaser rule) that trust beneficiaries may not trace trust property into the hands of third parties who obtained legal title to the property after having paid value without knowledge of the character of the property received. See G.G. Bogert and G.T. Bogert, *Handbook of the Law of Trusts* Section 165 (5th ed. 1973).

5. Bankruptcy Court jurisdiction in PACA cases is discussed in the following cases: *In re Gotham Provision Company, Inc.,* 669 F.2d 1000 (5th Cir.1982) (discussed in footnote number 9 of this opinion); *In the Matter of Harmon,* 11 B.R. 162 (Bankr.N.D.Tex.1980) (discussed in footnote number 9 of this opinion); *In re G & L Packing Co. Inc.,* 41 B.R. 903 (N.D.N.Y.1984)

(cited in footnote number 9 of this opinion); and *In re Fresh Approach, Inc.,* 51 B.R. 412 (Bankr.N.D.Tex.1985) (this Court finds *In re Fresh Approach, Inc.* to be of little assistance in the present case because of the vast factual differences present).

6. The first meeting of creditors (commonly referred to as the 341 meeting) was held on December 17, 1986. Thus under Rule 4007(c) of the Federal Rules of Bankruptcy Procedure the Plaintiff had until February 16, 1987, to file its dischargeability complaint. The Plaintiff's complaint was not filed until February 17, 1987 (one day late). Thus, this Court does not have jurisdiction over the complaint. See *In re Kirsch,* 65 B.R. 297 (Bankr.N.D.Ill.1986).

## CHAPTER 20A PERISHABLE AGRICULTURAL COMMODITY.[7]

The Perishable Agricultural Commodities Act (PACA) was first enacted in 1930 in an attempt to suppress unfair and fraudulent practices in the marketing of fresh fruits and vegetables traveling through interstate commerce. As an enforcement mechanism, Congress established two procedures by which violations under PACA could be addressed. First Congress provided for reparation proceedings to resolve contract disputes, and secondly Congress established enforcement proceedings to penalize persons who violated the provisions of the act.

In 1984, congress amended PACA in Sect. 499e by enacting a trust for the benefit of creditors which was modeled after the trust provisions of the Packers and Stockyard Act. Subsection (a) of Section 499e provides that "[i]f any commission merchant, dealer, or broker violates any provision of section 2 [7 USCS Sect. 499b] he shall be liable to the person or persons injured thereby...." [7 U.S.C.S. Section 499e(a)]. "Such liability may be enforced either (1) by complaint to the Secretary.... or (2) by suit in any court of competent jurisdiction...." 7 U.S.C.S. Section 499e(b).[8]

In 1984, Congress utilized the 1976 Packers and Stockyard Act trust provisions in adopting Section 499e(c)(2) of Title 7 of the United States Code. Section 499e(c)(2) provides as follows:

Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents. Payment shall not be considered to have been made if the supplier, seller, or agent receives a payment instrument which is dishonored. The provisions of this subsection shall not apply to transactions between a cooperative association (as defined in section 15(a) of the Agricultural Marketing Act (12 U.S.C. 1141(a)) [12 USCS Sect. 1141j(a)], and its members.

The three classes of property encompassed within the PACA trust are as follows: (1) all inventories of food or other products derived from perishable agricultural commodities, and (2) any receivables or (3) proceeds from the sale of such commodities or products.

■ On November 21, 1986, when the bankrupt debtor, Tom Neely Tanner, filed his Chapter 7 petition, he had neither perishable agricultural commodities, nor receivables nor proceeds from the sale of such commodities. Instead he had utilized the trust monies to pay creditors in the ordinary course of his business. The Plaintiff alleges the PACA authorizes it to trace funds into the hands of Tanner's creditors who were paid in the ordinary course of his business. This Court disagrees. It is the opinion of this Court that PACA does not authorize the plaintiff to trace funds into the hand of third party payees like the corner grocery store, the telephone compa-

---

7. When interpreting the provisions of PACA courts often look to the analogous Packers and Stockyards Act, See *In re Fresh Approach, Inc.*, 48 B.R. 926, 931 (Bankr.N.D.Tex.1985), which was passed in response to the fact that the major meat packers were engaging in unfair, discriminatory and anticompetitive practices.

8. Section 499e(c) specifies that the court of competent jurisdiction referred to in 499e(a) is the district court. Section 499e(c) provides, in pertinent part, that "[t]he several district courts of the United States are vested with jurisdiction specifically to entertain (i) actions by trust beneficiaries to enforce payment for the trust...."

ny, or the United States as payee of income taxes, etc.

## CONCLUSION

After reviewing all of the documents contained with the adversary proceeding, it is the opinion of this Court that the Plaintiff should have filed his complaint in the district court. In addition, the Court finds that the Plaintiff's dischargeability complaint is time barred. Wherefore, it is the decision of this Court that all defendants be DISMISSED for lack of subject-matter jurisdiction.[9]

**9.** The Court's decision not to recommend the withdrawal of the reference is based on the fact that the Court believes that the Plaintiff will be unable to recover. Put simply, this Court does not believe the PACA authorizes trust beneficiaries to trace trust funds into the hands of third parties who 1) had no knowledge of the character of the funds received and 2) who received monies for the payment of antecedent debts for services or goods.

In the case of *In the Matter of Harmon,* 11 B.R. 162 (Bankr.N.D.Tex.1980), a livestock supplier was allowed to recover trust funds which had been paid to a third party. In *Harmon,* Judge Brister ordered that an attorney representing a Parkers and Stockyards licensee turnover to the licensee's livestock supplier a portion of the monies he had received as a legal retainer. However, the Judge's order was based on two important considerations. First, the Judge found that the attorney had learned of the existence of the statutory trust imposed on the funds he had received. Secondly, the Judge only ordered the return of monies which had *not yet been earned,* even though he was aware that the funds were impressed with a statutory trust. Commentators have cited the *Harmon* decision for the proposition that a defendant must have knowledge of the statutory trust to be subject to it. See 10 Harl Agricultural Law at page 71–101 of the October 1986 Cumulative Supplement.

While there are other cases in which a trust beneficiary has been successful in forcing the return of trust monies, this Court believes that those cases are distinguishable from the present case. For example, in *In re Gotham Provision Company, Inc.,* 669 F.2d 1000 (5th Cir.1982), the Fifth Circuit Court of Appeals affirmed the lower courts' findings that a trust beneficiary under the Packers and Stockyards Act could force a secured lender to disgorge funds received from a licensee's accounts receivable line in which the lender held a perfected security interest. In *Gotham,* the secured lender was a bank who

had taken as collateral a security interest in the debtors inventories, accounts receivable and proceeds from the sale of meat. Thus, the bank held a security interest in all potential assets of the "floating" statutory trust. The *Gotham* scenario, unlike the one at bar, is exactly the kind of situation Congress was attempting to address when it passed the Parkers and Stockyards and the Perishable Agricultural Commodities Acts. Both Acts were passed in response to the growing problem associated with blanket security interests which covered livestock or produce received by the licensee but not yet paid for. Thus, Congress carved out an exception to the normal commercial laws and established a statutory trust which would prime secured lenders until the suppliers were paid in full. See 10 Harl Agricultural Law Section 71.09[2] (1987). However, Congress' decision to allow suppliers to prime secured lenders, as in cases like *Gotham* and *In re G & L Packing Co. Inc.,* 41 B.R. 903 (N.D.N.Y.1984), can in no way be read to give suppliers an independent cause of action against individuals or companies who render services and receive payments in the ordinary course of their businesses. Rather, it is the fiduciary duty of the licensee to ensure that there exists sufficient funds to assure prompt payment for produce received. Should a licensee, as in the present case, breach that duty the supplier's remedy is against the licensee. See 49 Fed.Reg. 45738 and 7 U.S.C. Section 499e.

Also supporting this Court's belief that the Plaintiff cannot recover funds from individuals or companies which occupy a position equivalent to a bona fide purchaser for value are the explanations which accompanied the promulgation of the PACA rules and regulations. In those explanations, Congress stated that "[t]rust assets are available for other uses by the buyer or receiver. For example, trust assets may be used to pay other creditors." 49 Fed.Reg. 45738.