In re AL NAGELBERG & CO., INC., Debtor.

John S. PEREIRA, as Trustee of Al Nagelberg & Co., Inc., Plaintiff,

v.

MARINE MIDLAND BANK, N.A., Internal Revenue Service, Richard E. Lyng, Secretary, Department of Agriculture; William (Bill) Cottle Produce, and Bank Leumi Trust Company of New York, Defendants.

Bankruptcy No. 86 B 12128 (TLB). Adv. No. 87–5380A.

United States Bankruptcy Court, S.D. New York.

March 15, 1988.

Robert Herzog, New York City, for trustee.

Rudolph W. Guiliani, U.S. Atty. for the S.D. of N.Y., New York City by James L. Garrity, Jr., Office of the General Counsel,

U.S. Dept. of Agriculture, Washington, D.C. by Andrew G. Stanton, for U.S.

Slade & Pellman, New York City by Eric D. Statman, for Marine Midland Bank, N.A.

## DECISION AND ORDER ON MOTION TO DISMISS COUNTERCLAIM AND CROSS–CLAIMS OF UNITED STATES OF AMERICA

TINA L. BROZMAN, Bankruptcy Judge.

Marine Midland Bank, N.A. (Marine), a secured creditor of Al Nagelberg & Co., Inc. (the debtor), moves to dismiss the counterclaim and cross-claims asserted by the United States of America on behalf of Richard E. Lyng, Secretary, Department of Agriculture, on the ground that they do not state claims upon which relief may be granted. For the reasons which follow we believe the motion must be denied.

Prior to its bankruptcy, the debtor was a licensed wholesale receiver and seller of perishable foods and agricultural products in the New York City Terminal Market in Hunts Point. It conducted its business out of three leased stores.

In June 1986, the Hunt's Point Market converted to cooperative ownership. Nagelberg purchased certificates of membership and the proprietary leases for the three stores which it had previously leased.

In January 1987, pursuant to an order of this court, the debtor sold its interest in the stores for $675,000 (the Co-op Proceeds), which is being held in escrow subject to the claims of creditors. Not long afterwards, John Pereira, the debtor's bankruptcy trustee, commenced this adversary proceeding for judgment declaring his interest in the Co-op Proceeds paramount to that of Marine and the other defendants. Marine has asserted that the security interests which the debtor granted it pre-petition to secure repayment of antecedent debt attach to the Co-op Proceeds. The Secretary's claims are based on section 5 of the Perishable Agricultural Commodities Act (PACA), 7 U.S.C. § 499e, which establishes a trust in the accounts receivable and proceeds of fruit and vegetables received by the debtor. He seeks judgment declaring that $425,430.82 of the Co-op Proceeds are held by the Trustee in constructive trust for unpaid vendors of the debtor because the debtor wrongfully utilized the proceeds of fruits and vegetables subject to the PACA trust to purchase the three stores at a time when it had unpaid vendors. His cross-claims seek judgment declaring that Marine and the other defendants have no interest in $425,430.81 of the Co-op Proceeds.

## DISCUSSION

On a motion to dismiss we are charged not with testing the facts underlying the complaint but, rather, the law on which the claim for relief is based. *See Spell v. McDaniel*, 591 F.Supp. 1090 (E.D.N.C. 1984); *Oneida Indian Nation v. New York*, 520 F.Supp. 1278, 1308 (N.D.N.Y. 1981), *aff'd in part, rev'd in part on other grounds*, 691 F.2d 1070 (2d Cir.1982). We must therefore determine not whether the Secretary is likely to prevail, but whether he is entitled to offer evidence in support of his claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). We are to treat as true the factual allegations of the complaint and may "dismiss only if 'it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Furman v. Cirrito*, 828 F.2d 898, 904 (2d Cir.1987) (Pratt, J., dissenting) quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

Section 499b(4) of PACA makes it "unlawful ... [f]or any commission merchant, dealer, or broker ... to fail or refuse ... [to] make full payment promptly in respect of any transaction in any such commodity to the person with whom such transaction is had...." To help insure the payment to vendors which is statutorily required, section 499e(c)(2) establishes in agricultural commodities received by a merchant, dealer or broker a "trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in

connection with such transactions has been received by such unpaid suppliers, sellers, or agents."

Marine urges that the Co-op Proceeds do not constitute assets of the PACA trust, because they are not what is generally considered to be the "proceeds" of the sale of fruits and vegetables. Pointing to a decision in which a bankruptcy judge determined that assets of the PACA trust cannot be followed into the hands of creditors paid in the ordinary course of business if the creditors are without knowledge of the character of the funds, *see Forestwood Farm, Inc. v. Tanner (In re Tanner)*, 77 B.R. 897 (Bankr.N.D.Ala.1987), Marine contends that the Co-op proceeds are similarly insulated. We disagree. Here, the Secretary is not seeking to recover the monies paid to the Hunt's Point Market, but to trace the PACA assets into the asset acquired by the debtor allegedly with those funds. Thus *Tanner* poses no bar.

■ PACA trust assets are not part of a bankrupt dealer's estate. *East Coast Potato Distributors v. Grant (In re Super Spud, Inc.)*, 77 B.R. 930 (Bankr.M.D.Fla. 1987); *In re Fresh Approach, Inc.*, 51 B.R. 412, 419 (Bankr.N.D.Tex.1985). The regulations implementing PACA and the explanations accompanying those regulations forcefully suggest that if the Secretary can trace diverted trust assets into another asset acquired by the delinquent buyer or receiver he may recover. 7 CFR § 46.46(c) provides that trust assets are to be preserved as a nonsegregated "floating" trust. Subdivision (e) of the same regulation requires that the trust assets be maintained "in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities" and declares unlawful and violative of PACA "[a]ny act or omission which is inconsistent with this responsibility, including dissipation of trust assets ..." Subsection (b)(2) of the same regulation defines "dissipation" broadly as any act or failure to act "which could result in the diversion of trust assets or which could prejudice or impair the ability of unpaid suppliers, sellers, or agents to recover money owed in connection with produce transactions."

■ Marine places much stock in an explanatory note to the regulations which indicates that the trust assets are available for other uses, such as the payment of creditors. 49 F.R. 45738 (1984). But the very next sentence of the explanation, which Marine ignores, provides that it is the buyer's or receiver's responsibility as trustee to insure that it has sufficient assets to assure prompt payment for produce and that any beneficiary under the trust will receive full payment. *Id.* Further the explanatory note states that the claims of secured lenders and unsecured creditors are subordinate to the trust claims of the supplier-creditors. *Id.* Thus we reject Marine's assertion that the use of the trust assets to purchase the co-operative membership was unquestionably proper. The utilization of trust assets to acquire another asset without maintenance of a reserve sufficient to satisfy all unpaid vendors constitutes a dissipation of the PACA trust. And whereas it might be impossible to recover the trust monies paid for the asset from a *bona fide* purchaser for value, the asset acquired is not immune from the reach of the Secretary.

■ If, as alleged, there was a wrongful diversion of trust assets, and if those assets can be traced into another asset held by the debtor, the new asset may be impressed with a constructive trust under ordinary trust principles. *See* III A. Scott, *Scott on Trusts*, § 202 at 1659 (3d ed. 1967); *cf. First State Bank v. Gotham Provision Company, Inc. (In re Gotham Provision Company, Inc.)*, 669 F.2d 1000, 1011 (5th Cir. Unit B) *cert. denied* 459 U.S. 858, 103 S.Ct. 129, 74 L.Ed.2d 111 (1982). In *Gotham* (which was decided under the Packers and Stockyards Act, the statute upon which the PACA trust provisions are modeled, *Tanner, supra*, 77 B.R. at 900), the interest of the debtor's secured lender in accounts receivable, inventory and proceeds was held subordinate to the rights of the trust beneficiaries where the trust funds had been commingled with funds not subject to the trust. Not only did the

lender come behind the trust beneficiaries with respect to monies held, as here, in escrow, but it had to disgorge monies which the debtor had paid in reduction of its debt. The court reasoned that the lender was not entitled to the protection given to the grocery store which purchases the products derived from the trust beneficiary's livestock. Similarly, in *McLean Cattle Company, Inc. v. Culton, Morgan, Britain & White (In re Harmon)* 11 B.R. 162 (Bankr.N.D.Texas 1980), another Packers and Stockyard Act case, it was held that trust assets which were paid as a retainer to an attorney who knew of the existence of the trust before he earned the retainer were recoverable by a trust beneficiary. As in *Gotham,* and *Harmon,* if the Secretary can prove the facts alleged, he is entitled to resort to general principles of trust law to follow the trust assets into the Co-op Proceeds.[1]

Accordingly, the motion to dismiss the Secretary's counterclaim and cross-claims is denied. IT IS SO ORDERED.

---

1. Because we do not know what facts the Secretary will prove at trial, we decline Marine's invitation to declare the remedy which will be most appropriate for redress of the alleged PACA violations.