**Richard E. LYNG, Secretary of Agriculture of the United States, Plaintiff,**

v.

**JDC ENTERPRISES d/b/a Rogers Wholesale Produce and Willis Bank, Defendants.**

**Civ. A. No. H–87–1359.**

United States District Court, S.D. Texas, Houston Division.

May 29, 1990.

Joe Mirsky, Houston, Tex., for plaintiff.

Robert Powell, Conroe, Tex., Andrew Allen, Spring, Tex., Kevin Kneisley, Conroe, Tex., for defendants.

### MEMORANDUM AND ORDER

SINGLETON, District Judge.

*Background*

The matter now before the Court is a Motion to Dismiss filed by defendant Citadel Bank—Willis Branch ("Willis Bank"). The Court chose to consider that motion as one for summary judgment, and Willis Bank was allowed to submit proof detailing why, under what circumstances, and in what manner Willis Bank received the allegedly wrongful payments. Willis Bank has done so by submitting loan documents and the affidavits of Steve Slover, its Executive Vice President. Willis Bank's motion for Summary Judgment is GRANTED.

This is a lawsuit by the Secretary of Agriculture pursuant to the Perishable Agricultural Commodities Act ("PACA" or "the Act"), 7 U.S.C.A. §§ 499a–499t (1980). Congress enacted PACA in order to provide a comprehensive scheme for the regulation of traders of fresh and frozen fruits and vegetables. The primary purpose of PACA

is to protect the suppliers of perishable agricultural commodities from unfair practices committed by commissioned merchants, dealers, and brokers of those goods. The portions of the Act relevant to this case make it unlawful for any commissioned merchant, dealer, or broker to fail to make full payment promptly to its supplier. 7 U.S.C.A. § 499b(4). The Act also prohibits any person from carrying on the business of a commissioned merchant, dealer, or broker in perishable agriculture commodities in interstate or foreign commerce without holding a valid license issued by the Secretary of Agriculture. *Id.* at § 499c(a).

In 1984 Congress amended PACA in order to provide further protection to the suppliers of perishable agriculture commodities. Congress did this by providing for the creation of a trust over funds in the broker's hands. The trust exists for the benefit of unpaid suppliers or sellers of fresh produce until they receive full payment for the commodities that they supply to brokers and merchants. Under PACA the corpus of the trust consists of the produce, inventories of food or other products derived from the produce, and any receivables or proceeds from their sale. 7 U.S.C.A. § 499e(c)(2)(Supp.1989). The Secretary has promulgated regulations which implement the 1984 amendments to PACA. These regulations provide that the trust assets are to be preserved as a nonsegregated floating trust. 7 C.F.R. 46.46(c) (1989). The 1984 amendments also provide the district courts with jurisdiction over actions brought by the Secretary to prevent and restrain dissipation of the trust. 7 U.S.C.A. § 499e(c)(4).

These new trust provisions are similar to the trust provisions of the Packers and Stockyards Act, 7 U.S.C.A. §§ 181–229 (1980). The trust provisions of both acts are interpreted similarly, and the courts have looked to the Packers and Stockyards Act for guidance in interpreting PACA. *See, e.g., In re Tanner,* 77 B.R. 897, 900 (Bkrtcy.N.D.Ala.W.D.1987).

This lawsuit was brought by the Secretary of Agriculture against defendants JDC Enterprises, Inc. ("JDC"), Willis Bank, and others on the allegation that the defendants held funds in trust for unpaid produce suppliers intended to be protected by the Act. The Secretary alleges that between February 19, 1985, and July 8, 1985, JDC made payments to Willis Bank in the total amount of $12,911.75. According to the Secretary, that money was part of the corpus of the floating trust created by PACA and could not properly have been distributed by JDC so as to impair the rights of the producer-beneficiaries of the trust.

The Secretary argues that Congress intended to allow sellers the right to recover assets dissipated into the hands of innocent third parties by the produce buyer. To support this expansive interpretation of his own authority, the Secretary cites *In re Gotham Provision Co.,* 669 F.2d 1000, 1008–12 (5th Cir. Unit B 1982), and *In re G & L Packing Co.,* 41 B.R. 903 (N.D.N.Y. 1984), two cases interpreting the trust provisions of the Packers and Stockyards Act.

These cases are distinguishable from the case at bar. *Gotham* and *G & L* were private actions arising in the context of bankruptcy. The present case, by contrast, is one brought by the Secretary of Agriculture outside the context of bankruptcy. The bank in *Gotham* was secured by the broker's inventory and aware of the broker's financial difficulties. 669 F.2d at 1003. After filing its Chapter XI bankruptcy petition, Gotham, the packer governed by The Packers and Stockyards Act, deposited money with the plaintiff bank. Along with pre-bankruptcy deposits, that money was "used [apparently as an offset] to lower the Bank's loan balance from $450,000 to $112,324.19." *In re Gotham Provision Co.,* 1 B.R. 255, 257 (Bankr.S.D.Florida 1979). *Gotham,* thus, presented exactly the scenerio envisioned and intended to be remedied by Congress: A bank holding a security interest in inventory held by a bankrupt broker sought to prevail over producers who had not been paid for supplying that inventory. The funds at issue in *Gotham* would have been trust funds in the hands of the trustee had the bank in *Gotham* not unilaterally taken the funds for

its own benefit. Thus, in *Gotham* the bank itself initiated and executed the transfer which constituted dissipation of the funds. Finally, in *Gotham* the Court of Appeals indicated that, in applying the Act, holders of secured interests in receivables could not be equated to grocery stores purchasing the broker's inventory. The Court of Appeals noted that only the former sort of creditors, not the latter, could be reached by the statute. 669 F.2d at 1009–10 n. 10 (citing the Act's legislative history at 122 Cong.Rec. 12867 (May 6, 1976)). The fact that here the defendant is a bank that lent money to JDC is, of itself, immaterial to the application of the statute.

Likewise, *G & L* presented a situation to which the Packers and Stockyard's Act was meant to apply. In *G & L* the bank took a blanket security interest in G & L's present and future inventory, accounts receivable, and contract rights. The bank also received, both indirectly *and directly*, payments from G & L's customers.

*Lyng v. A. Pellegrino & Sons, Inc.*, 694 F.Supp. 976 (D.Mass.1988), is similarly distinguishable. The narrow holding of *Pellegrino* is that the Secretary is entitled to recover trust assets which are transferred to stockholders of the trustee. *Id.* at 977. Clearly, stockholders are not the sort of innocent third parties not intended to be reached by the Act.

Willis Bank defends against the Secretary's broad interpretation of his own power by challenging the authority of the Secretary and this Court to order an innocent third party not subject to PACA's licensing scheme, or in any way related to or controlled or owned by such a party, to disgorge dissipated funds for the benefit of those claiming trust assets.

Certain well-reasoned opinions indicate that innocent third party defendants can not be made to disgorge trust assets already dissipated. *See, e.g., In re Harmon*, 11 B.R. 162 (Bkrtcy.N.D.Tex.1980) (under the Packers and Stockyards Act defendants made to disgorge only the trust assets received after actual or constructive knowledge of the nature of the funds); *In re Nagelberg & Co.*, 84 B.R. 19, 21 (Bkrtcy.S.

D.N.Y.1988) (where the court suggested that "it might be impossible to recover the trust monies paid for the assets from a *bona fide* purchaser for value"). *See also In re Tanner*, 77 B.R. 897, 901 n. 9 (Bkrtcy.N.D.Ala.1987). The *Tanner* court concluded that PACA does not authorize trust beneficiaries to trace trust assets into the hands of third parties who had no knowledge of the character of the funds received and who received money for the payments of antecedent debts. *Id.* As the *Tanner* Court stated, "[I]t is the fiduciary duty of the licensee to insure that there exists [sic] sufficient funds to assure prompt payment for produce received. Should a licensee, as in the present case, breach that duty the suppliers' remedy is against the licensee." *Id.* This Court notes, as did the *Tanner* court, that "[t]rust assets are available for other uses by the buyer or receiver. For example, trust assets may be used to pay other creditors." *Id.* (quoting 49 Fed.Reg. 45738).

Willis Bank was one of these "other creditors" to the extent that it received payments on loans not secured by inventory. While the summary judgment proof shows that some of the money lent by Willis Bank was secured by inventory, it also shows that the majority was not so secured. *See* Supplemental Affidavit of Steve Slover. Furthermore, summary judgment proof submitted by Willis Bank clearly shows that the only amount secured by an interest in inventory ($24,101.13) resulted from the roll-over of an earlier note which was not so secured. Thus, Willis Bank lent no new money secured by an interest in inventory, and thus the lending arrangement at issue in this case was not one meant to be remedied or controlled by PACA.

Willis Bank's summary judgment proof also shows that Willis Bank had no knowledge that its loan payments were being made with PACA trust funds and no knowledge that JDC ever failed to pay for any produce it received. *See* Affidavit of Steve Slover at 2. Finally, after requests from this Court, the Secretary has failed to provide summary judgment proof to the contrary.

PACA and its legislative history show that the Act was intended to empower the Secretary to *prevent* dissipation of trust funds. 7 U.S.C.A. § 499e(c)(4); H.R. No. 543, 98th Cong., 2nd Sess. 7, *reprinted in* 1984 U.S.Code.Cong. & Admin.News 405, 410. Here, the Secretary attempts to recover funds after they have been dissipated by payment to a third party who took them in good faith. As the Secretary notes, bankruptcy courts have correctly applied trust principles to allow private plaintiffs to set aside payments to third parties who received those funds with knowledge of their nature. The Court believes that Congress contemplated that result, but not the result urged here by the Secretary. The legislative history itself indicates that "[s]ince the Secretary currently lacks jurisdiction over persons who are not subject to license, the trust requirements would be rendered virtually unenforceable without the authority to act on behalf of produce suppliers to freeze the receiver's trust assets...." *Id.* at 411. The amendments to PACA did not grant the Secretary any "jurisdiction" over persons not subject to license under PACA. In this case the trust requirements may, in fact, have been rendered unenforceable by the Secretary's failure to freeze the receiver's trust assets in a timely fashion. The Court will not remedy the situation by extending the Secretary's powers beyond those granted or contemplated by the Act.

Finally, the Court notes that were the Secretary's interpretation of PACA to prevail, no merchant could safely sell to a broker, because payments made by the broker to the merchant could be ordered returned regardless of the seller's good faith, a result dependent only upon facts completely beyond the seller's knowledge. That result would be unacceptable. It is therefore

ORDERED that summary judgment be granted for Willis Bank. Willis Bank is hereby dismissed.