**CHIQUITA BRANDS, INC.,**
**et al., Plaintiffs,**

v.

**MICBRUCE, INC. d/b/a Freshline,**
**et al., Defendants.**

**No. 1:89CV1781.**

United States District Court,
N.D. Ohio, E.D.

July 13, 1992.

Stephen McCarron, Silver Springs, Md. and Frederick Coombs, III, Harrington,

---

Huxley, Smith, Mitchell & Reed, Youngstown, Ohio, for plaintiffs.

John Doheny, Arter & Hadden, Cleveland, Ohio, for defendant Norfolk and Western Ry. Co.

## MEMORANDUM OF OPINION

MANOS, District Judge.

On September 18, 1989, plaintiffs filed the above-captioned case against multiple defendants pursuant to the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499a et seq., to recover funds allegedly owed to them, as commodities suppliers, from MicBruce, Inc. d/b/a Freshline ("Freshline"), a commodities broker, and from other entities named as defendants because they received monies from Freshline which were subject to a trust. Plaintiffs are suppliers of perishable agricultural commodities and are protected by PACA.

On October 10, 1990, plaintiffs filed their Third Amended Complaint naming, among others, Norfolk and Western Railway Company ("NW") as a new defendant. They charge that NW improperly received monies held in trust for them and that the monies should be returned.

On March 12, 1991, NW filed a motion for Summary Judgment stating that it is an unsecured creditor supplying services in the ordinary course of business, and that it had no knowledge of a breach of the trust until it was named in this action. It charges that under these circumstances, the provisions of PACA do not require forfeiture of the monies.

For the following reasons, the motion for summary judgment is granted.

## I. FACTS

The plaintiffs in this action are all suppliers of perishable agricultural commodities which purchase various vegetables and fruits in interstate commerce and sell them to brokers for eventual resale to retailers. The plaintiffs are licensed by the Secretary of the United States Department of Agriculture ("USDA") pursuant to the provisions of the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499a et seq.

Defendant Freshline is a broker of various agricultural commodities which it sells to retailers. It purchased such commodities from the plaintiffs and, pursuant to PACA, a trust was established in plaintiffs' favor as to all the commodities received, all inventories of food or other products derived from them, and the proceeds from their subsequent sale, which would continue until all were fully paid. Freshline did not make timely payment and plaintiffs, as required, sent written notices to the USDA and to Freshline of their intent to preserve the trust benefits.

Defendant Norfolk and Western Railway engages in transportation services in exchange for freight fees. From May, 1986 until July, 1989 it provided, and was paid for, transportation services to Freshline. In its summary judgment motion, it charges 1.) that all the services were provided and paid for in the ordinary course of business; 2.) that it had no knowledge, and no reason to have knowledge, of breach of a trust; 3.) that it never obtained a security interest in any assets of Freshline in exchange for its services; and, 4.) it had no knowledge that any monies received from Freshline were proceeds due plaintiffs from the sale of produce.

The plaintiffs contend that they are entitled to recover the freight fees paid to NW in exchange for services provided in the ordinary course of business because 1.) the statute extends to recovery of trust assets from unsecured creditors; 2.) unsecured creditors are not immune from liability due to lack of notice of the trust; and, 3.) NW knew that Freshline was a produce company and that alone is sufficient to charge it with notice.

## II. STANDARD OF REVIEW

Fed.R.Civ.P. 56(c) sets forth the standard for granting a motion for summary judgment. It states in part:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admis-

sions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law....

This standard has been explained by the U.S. Supreme Court in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), and *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In *Anderson* the Court set out the requisites needed to show there is no genuine issue as to a material fact. The Court stated

[a]s to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.

*Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

The Court also held that "it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Id.*

Regarding the existence of a genuine issue of material fact, the Court held that summary judgment is not appropriate if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* However, the Court also noted that "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249, 106 S.Ct. at 2511. The nonmoving party has the burden of producing the evidence, and the "mere existence of a scintilla of evidence in support of the plaintiffs' position will be insufficient; there must be evidence on which a jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. at 2512. If evidence is not presented, summary judgment is appropriate.

Once the moving party has met its burden under Rule 56(c), the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the mate-

rial facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356. However, any inferences from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Id.* at 587, 106 S.Ct. at 1356.

In *Celotex* the Court explained that the nonmoving party must designate specific facts showing a genuine issue for trial. Summary judgment is appropriate if a party, after adequate time for discovery, "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. The moving party is not required to prove the absence of a genuine issue of fact, even with respect to an issue on which the nonmoving party bears the burden of proof. *Id.* at 325, 106 S.Ct. at 2554. "Instead ... the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.*

The *Celotex* Court also stated that "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses", *Id.* at 323–324, 106 S.Ct. at 2553, and that the summary judgment procedure should not be regarded as a "disfavored procedural shortcut" but should be viewed as "an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327, 106 S.Ct. at 2555.

## III. ANALYSIS

### A. The Perishable Agricultural Commodities Act

Plaintiffs have asserted their charges against NW pursuant to the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499a et seq., which was enacted by Congress in 1930 to provide a comprehensive scheme for the regulation of brokers of fresh and frozen fruits and vegetables. *Advantage Produce Marketing Co.,*

*Inc. v. Caito Produce, et al.,* 1991 WL 424983 at *3, 1991 U.S. Dist. LEXIS 6953, at *8 (S.D.Ohio, May 10, 1991). Its primary purpose was to protect suppliers of perishable agricultural goods from the predominating unfair practices that were being committed by merchants, dealers and brokers of the goods. *Id.* In 1984 PACA was amended and 7 U.S.C. § 499e(c) states, in pertinent part:

(1) It is hereby found that a burden on commerce in perishable agricultural commodities is caused by financing arrangements under which commission merchants, dealers, or brokers, who have not made payment for [such] commodities purchased, contracted to be purchased, or otherwise handled by them on behalf of another person, encumber or give lenders a security interest in, such commodities, or on inventories of food or other products derived from such commodities, and any receivables or proceeds from the sale of such commodities or products, and that such arrangement are contrary to the public interest. This subsection is intended to remedy such burden ... and to protect the public interest.

7 U.S.C. § 499e(c)(1) (West Supp. 1990).

Congress amended PACA in order to provide protection for the unpaid suppliers and sellers of the commodities. The statutory remedy imposed to alleviate the burden caused by the financing arrangements addressed in subsection (1) was codified in subsection (2) of § 499e(c). This subsection sets up a trust for the benefit of all unpaid sellers of these commodities. Subsection (2) provides, in pertinent part:

(2) Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities ... shall be held by such ... merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such

transactions has been received by such unpaid suppliers, sellers, or agents....

7 U.S.C. § 499e(c)(2). Under this provision, the corpus of the trust consists of the produce, inventories of food or other products derived from the produce and any receivables or proceeds from their sale. *See,* 7 U.S.C. § 499e(c)(2) and n. 3.

Pursuant to this amendment, Congress has provided the unpaid sellers of perishable agricultural commodities with the benefits of a statutory trust subject to trust law. "Absent specific instructions to the contrary, Congress must have intended for such a trust to operate according to the settled principles of trust law." *C.H. Robinson Co. v. B.H. Produce Co., Inc.,* 952 F.2d 1311, 1316 (11th Cir.1992).

These amendments were modeled after similar provisions of the Packers and Stockyards Act ("PSA") as amended in 1976, 7 U.S.C. §§ 181–229. Authority developed under that statute is persuasive in the interpretation of the PACA provisions at issue here. *Forestwood Farms v. Tanner (In re Tanner),* 77 B.R. 897, 900 (Bankr.N.D.Ala.1987); *In re Fresh Approach, Inc.,* 48 B.R. 926, 931 (Bankr. N.D.Tex.1985).

**B. The Bona Fide Purchaser Defense**

■ The issue to be determined is whether the plaintiffs are entitled to recover sums of money paid to NW by Freshline between May, 1986 and July, 1989. NW charges that it is not a secured creditor and that the monies are protected because they were received in the ordinary course of business and without NW's knowledge of any breach of trust.

The Restatement (Second) of Trusts (1959) states that under general trust principles a transferee which is a bona fide purchaser will not be deprived of the proceeds even if the property were transferred in breach of the trust.

(1) If the trustee in breach of trust transfers trust property to, or creates a legal interest in the subject matter of the trust in, a person who takes for value and without notice of the breach of trust, and who is not knowingly taking part in an illegal transaction, the latter holds the

interest so transferred or created free of the trust, and is under no liability to the beneficiary.

(2) ... such a transferee is called a "bona fide purchaser."

Restatement (Second) of Trusts § 284(1)(2) (1959). *See also* 4 Scott & Fratcher, *The Law of Trusts*, § 284 (4th ed. 1989).

The standards of the bona fide purchaser doctrine have been applied to the trust provisions of PACA. *Robinson*, 952 F.2d 1311; *In re Tanner, supra*. To qualify as a bona fide purchaser, NW will have to show that any trust property it received was transferred "for value" and "without notice of the breach of trust."

#### 1. For Value

■ Ordinarily, the transfer of trust assets in satisfaction of an antecedent debt is not for value. "[I]f the trustee transfers trust property in consideration of the extinguishment of a pre-existing debt or other obligation, the transfer is not for value." Restatement (Second) of Trusts § 304(1).

However, trust law recognizes an exception to this principle if the property transferred is money. "If the trustee transfers trust property in consideration of the extinguishment in whole or in part of a pre-existing debt or other obligation, the transfer is for value, if (a) the trust property transferred is a negotiable instrument or money...." Restatement (Second) of Trusts § 304(2). The reasoning behind this exception is clear. "It is absolutely necessary for practical business transactions that the payee of money in due course of business shall not be put upon inquiry at his peril as to the title of the payor." Scott & Fratcher, *supra*, § 302 (quoting *Stephens v. Board of Education*, 79 N.Y. 183, 187 (1879)).

The payment of trust monies for services is not prohibited by the statute. The comments to the Regulations implementing 7 U.S.C. § 499e(c) state that:

Trust assets are available for other uses by the buyer or receiver. For example,

trust assets may be used to pay other creditors....

49 Fed.Reg. at 45738 (November 20, 1984).

In *Tanner* the court held that:

this court does not believe that the PACA authorizes trust beneficiaries to trace trust funds into the hands of third parties who ... received monies for the payment of antecedent debts for services or goods.

*Tanner* at 901. *See also C.H. Robinson Co. v. B.H. Produce Co., Inc.*, 723 F.Supp. 785, 793 n. 3 (N.D.Ga.1989) (citing *Lyng v. Frydman*, No. 86–1210Y, slip op., 1988 WL 168632 (N.D.Ohio, March 23, 1988), as holding that "cases and the statutory language do not give an independent cause of action against companies who render services and receive payment from the trustee.").

As permitted under PACA and as defined by trust law, NW has given value to Freshline in the form of its transport services, and received payment to which it was entitled.

#### 2. Notice of Breach of Trust

NW must also establish that they received the funds "without notice of the breach of trust." "A person has notice of a breach of trust if (a) he knows or should know of the breach of trust...." Restatement (Second) of Trusts § 297.

Courts interpreting the PACA have consistently held that the trust beneficiary's ability to trace assets into the hands of third parties is limited to two situations in which the transferee has knowledge of the breach of trust. The first is if the third party took the funds with actual or constructive knowledge that a trust had been breached. *Lyng v. Sam Compton Produce Company, Inc.*, (No. C3–86–759, (E.D.Tenn.1988) ("I am of the opinion that nothing in the PACA statute prohibits the tracing of assets into the hands of any creditor who takes with knowledge of the breach of the trust, whether it be the corner grocery store or a bank."). *See also, Tanner* at 901. ("... this court does not believe that the PACA authorizes trust beneficiaries to trace trust funds into the hands of third parties who (1) had no

knowledge of the character of the funds received ...").

The plaintiffs rely on *McLean Cattle Co. v. Culton, Morgan, Britain & White, (In re Harmon)*, 11 B.R. 162 (Bankr.N.D.Tex. 1980) as holding that fees for service can be recovered by plaintiffs. However, in *Harmon* the seller was permitted to recover only that part of a lawyer's retainer fee which was unearned at the time the lawyer discovered that an unpaid cash seller existed. The lawyer retained the part of the fee earned before he knew.[1] In *Harmon* the attorney had actual knowledge of the breach and was in a position to be aware of the existence of a trust to which the monies could be subject. The plaintiffs do not charge that NW had actual knowledge of a breach of trust nor do they present any circumstances which would lead it to know of a trust.

The plaintiffs charge that NW had constructive notice of the trust because it knew Freshline dealt in produce and because PACA is a federal statute. They state that this is sufficient to show notice.[2] However, established trust law states that it is knowledge of the "breach of trust" that is dispositive. "If the trustee transfers trust property in breach of trust to a transferee for value, the transferee takes free of the trust although he had notice of the existence of the trust, unless he has notice that the trustee is committing a breach of trust in making the transfer." Restatement (Second) of Trusts § 296 (1951).

As required under *Celotex*, the plaintiffs present no evidence that NW knew monies received for services were paid in breach of trust and no evidence of circumstances which would lead it to have such knowl-

edge. Stating that the fees could be proceeds of the sale of trust property and paid out in breach of trust is insufficient to establish constructive knowledge of a breach of trust. *C.H. Robinson Co. v. B.H. Produce Co., Inc.*, 723 F.Supp. 785, 793 (N.D.Ga.1989).

The second situation in which monies must be forfeited is if the third party has a security interest in the assets of the trust. Plaintiffs present no evidence in this case to show that NW was ever a secured creditor of Freshline.

## III. CONCLUSION

Plaintiffs present no evidence that NW took the monies with actual or constructive knowledge of breach of the trust and no evidence that it was a secured creditor. Accordingly, pursuant to the PACA and established trust law, it is permitted to keep the monies it received and its motion for summary judgment is granted.

IT IS SO ORDERED.

---

1. In addition, the law firm would not be a bona fide purchaser under traditional trust law because accounts receivable are not "for value." Restatement (Second) of Trusts § 304(1).

2. Plaintiffs do not distinguish "constructive notice" of the trust from "constructive notice of the breach of trust." The *Robinson* court stated:

   Constructive notice of the trust for the purposes of bankruptcy distribution is not the same as "constructive" notice of breach of trust for purposes of determining bona fide

purchaser status ... the term "constructive [notice of breach] (sic) ... is not a happy one, and its employment generally leads to loose thinking. It seems more accurate to say that a person has notice of a breach ... when he has actual knowledge [of it] or when he has knowledge of such facts that he should ascertain ... whether the trustee is committing a breach.... Scott and Fratcher, *The Law of Trusts*, § 297 (4th ed. 1989).
   952 F.2d 1311, 1315 n. 4.